304 Ga. 385
FINAL COPY

S18A0796.  GREEN v. THE STATE.

PETERSON, Justice.

Raymon Jamaal Green appeals his conviction for malice murder and other crimes, stemming from two different incidents occurring on May 9 and 21, 2010, the latter of which resulted in the death of Christopher Finney.[1] Green

---

[1] On December 21, 2010, a Bibb County grand jury indicted both Green and Demeko Wilson on four counts of aggravated assault based on the May 9 incident (Counts 1 through 4). In the same indictment, both men were charged based on the May 21 incident with murder (Count 5), two counts of felony murder (Counts 6 and 7), two counts of criminal attempt to commit armed robbery (Counts 8 and 9), two counts of aggravated assault (Counts 10 and 11), and possession of a firearm during the commission of a felony (Count 12). Green and Wilson were tried together in September 2011, and both were found guilty on all counts. The trial court sentenced Green to life for the murder count. Additionally, the trial court on September 30, 2011, sentenced Green to 20 years to serve 10 consecutively on two of the aggravated assault counts (Counts 1 and 2) related to the May 9 incident; 20-year concurrent sentences for the other two May 9 aggravated assault counts (Counts 3 and 4); 20 years to serve 10 concurrently on one of the attempted robbery counts (Count 9); 20 years consecutive on one of the May 21 aggravated assault counts (Count 11); and five years consecutive on the gun possession count (Count 12). The court purported to merge the felony murder count, as well as the counts charging the attempted robbery and aggravated assault of Finney, into the murder count; none of that is challenged on appeal. Green filed a "First Amended Motion for New Trial" on June 29, 2016; this was later amended. The trial court (not the judge who presided over the trial of the case) denied the motion on March 29, 2017. After confirming that no motion for new trial was filed in the case prior to the June 2016 filing, we dismissed Green's appeal as untimely. On remand, Green filed a motion for out-of-time appeal, explaining that trial counsel had in October 2011 filed a motion for new trial that would have been timely but for the fact that it was filed under the wrong case number. The trial court

argues that the evidence was insufficient to support the verdicts and that the trial court erred in denying his motion for directed verdict as to certain counts. He also argues that trial counsel provided ineffective assistance in failing to move to sever the counts related to the May 9 incident, introduce a certified copy of a burglary conviction of a key State witness (Tony Chatfield), seek a jury instruction on impeachment by felony conviction, and argue in closing that Chatfield's conviction rendered his testimony unbelievable. Because the evidence is sufficient to support Green's convictions and he has not shown that he was prejudiced by any of the alleged deficiencies of counsel, we affirm.

The trial evidence viewed in the light most favorable to the verdicts showed that on the evening of May 9, Nadina Waller, her mother Diane Waller, and Nadina's minor daughter and niece entered a convenience store. There, Nadina saw Green and co-defendant Demeko Wilson. Nadina told Diane that Wilson was the man who had broken into Nadina's home. The Wallers confronted Wilson, eventually taking their altercation outside. At one point, Wilson lifted up his shirt so Nadina could see a gun in his waistband and

granted an out-of-time appeal in an order filed on November 21, 2017. Green filed a notice of appeal on December 12, 2017, and the case was docketed to this Court's April 2018 term and orally argued on May 22, 2018.

2

unsuccessfully attempted to coax Nadina behind the building. As the women began to drive away in their separate vehicles, they heard four or five shots fired. Turning around to check on her mother and the children, Nadina saw Green and Wilson running off in the same direction. None of the Wallers or their vehicles was shot.

On the evening of May 21, Christopher Finney and Tony Chatfield were walking together when they were approached by two men identified by Chatfield as Green and Wilson. Both Green and Wilson wore black hats. Chatfield saw that both men had guns — Green pulled out a .45 caliber handgun, and Wilson indicated he had a .380 handgun.[2] Green and Wilson asked Chatfield and Finney what they had in their pockets. When Chatfield replied that he had only $10, Green and Wilson turned their attention to Finney. Chatfield attempted to run away and Finney followed. As he was running, Chatfield heard shots fired and saw Green firing his gun. Finney was shot in the back and died of his injuries.

Shortly after the shooting, Green and Wilson briefly went to the home of

---

[2] Chatfield testified, "[Wilson] had showed his, but [Green] had his in his hand." Later he testified, "I saw one person with [a gun] out, and other one had showed his."

Chatfield's sister, Whitney Waters, who lived less than half a mile from the street on which Finney was shot.[3] At the house, Green and Wilson asked for bleach, a place to wash their hands, and use of a telephone. The two were breathing hard and seemed to be in a hurry. By the next morning, Waters found two black hats in a trash can in her back yard.

A .45 caliber shell casing and two .380 shell casings, all undamaged, were found at the scene of the May 21 shooting; the bullet that killed Finney was never found by police. The .45 caliber shell casing found at the scene of the May 21 shooting was fired from the same gun as one of the five .45 caliber shell casings collected at the scene of the May 9 incident. The other four .45 caliber shell casings collected at the scene of the May 9 incident were fired from a different gun.

1. Green argues that the evidence is insufficient to support his convictions and that the trial court erred when it denied his motion for directed verdict as to certain counts. We disagree.

_____

[3] Chatfield was one witness, but not the only one, who testified to seeing Green and Wilson at Waters's home that night. Chatfield testified that he ran to his sister's home after the shooting, and Green and Wilson arrived a few minutes later. Waters, characterized by the prosecutor as "basically a hostile witness," testified that Chatfield was not at her house that evening.

We review the sufficiency of evidence for whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This same standard applies when evaluating the denial of a defendant's motion for directed verdict. See Lewis v. State, 296 Ga. 259, 261 (3) (765 SE2d 911) (2014). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). "[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted).

(a) Green first argues that there was insufficient evidence that he was involved in any of the alleged May 9 assaults. He notes that Diane Waller testified that she saw two figures in shadow at the time shots were fired, with only one of them, who she assumed was Wilson, shooting a gun. Green

5

emphasizes that no witness saw Green in possession of a firearm during the incident. And he suggests that the evidence was particularly weak as to the alleged aggravated assaults of Nadina and the children, given Diane's testimony that the shots were directed at her and evidence that Nadina already had pulled her car out ahead of Diane when the shots were fired.

The aggravated assault charges arising from the May 9 incident alleged that Green assaulted Nadina, Diane, and each of the two children by shooting at them with a handgun. Notwithstanding Green's arguments to the contrary, there is evidence that authorized the jury to conclude that Green shot in the direction of all four alleged victims. The women testified that they heard as many as five shots fired, and the ballistics evidence, coupled with testimony by Chatfield about the guns used by Green and Wilson, authorized a conclusion that two different guns were used in the assault, one of them by Green. In addition, Nadina testified that she saw Green and Wilson running off in the same direction after the shots were fired.

Moreover, the statute under which Green was charged, OCGA § 16-5-21 (a) (2), does not require the deadly weapon to have been pointed directly at each victim, but merely that the defendant use the deadly weapon in such manner as

to "place[ ] another in reasonable apprehension of immediately receiving a violent injury." See OCGA § 16-5-20 (a) (2); see also Roberts v. State, 267 Ga. 669, 671 (1) (482 SE2d 245) (1997) (sufficient evidence to support aggravated assault conviction where victim testified that he ran when he saw two men start shooting and other people being shot, from which the jury could surmise that the victim suffered apprehension of being shot); Hawkins v. State, 260 Ga. 138, 138 (2) (b) (390 SE2d 836) (1990) (defendant's testimony that he fired into crowd to frighten group established offense of aggravated assault). Here, Diane testified that she was frightened when she heard the shots, as they seemed directed at her vehicle and were heard as "a whistle coming past" her. Nadina perceived the shots as intended for her given the prior altercation and testified they were "extremely close." Fearing one of the children had been shot, she checked on them immediately, pulling her daughter out of her car seat. There is sufficient evidence to support the guilty verdicts against Green on the aggravated assault counts arising from the May 9 incident.

(b) Green argues that the evidence also is insufficient to support the convictions arising from the May 21 incident. He argues that the State did not show that he attempted to rob or assault Chatfield because there was no

7

evidence that Green brandished a weapon at Chatfield or attempted to take anything from Chatfield by force. Green also argues that his murder conviction cannot be sustained because Chatfield was not credible when he testified that he saw Green and Wilson shoot at Finney and was able to identify the particular caliber of guns that each used. Noting that police found $878.37 in Finney's pockets, Green contends Chatfield's story is "inconceivable" because Green and Wilson would not have killed Finney to rob him without having taken the money.

OCGA § 16-8-41 (a) provides that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." The offense of criminal attempt is committed when the defendant, with the intent to commit a specific crime, commits a substantial step toward its commission. See OCGA § 16-4-1. The element of use of an offensive weapon does not require proof that the defendant pointed the weapon at the victim. Rather, "'use of an offensive weapon' takes place when the weapon is used as an instrument of actual or constructive force — that is, actual violence

8

exerted on the victim or force exerted upon the victim by operating on the victim's fears of injury to the person, property, or character of the victim" such that "the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon is being used." Lucky v. State, 286 Ga. 478, 482 (2) (689 SE2d 825) (2010). Based on Chatfield's testimony that Green pulled out a gun and asked Chatfield what he had in his pockets, leading Chatfield to run away, the jury was authorized to conclude that Green used a firearm to attempt to take money from Chatfield. See Johnson v. State, 340 Ga. App. 429, 432 (1) (797 SE2d 666) (2017) (defendant's display of a handgun tucked into his pants was sufficient proof that he used handgun for purposes of armed robbery statute); Anderson v. State, 238 Ga. App. 866, 871 (1) (519 SE2d 463) (1999) (sufficient evidence of armed robbery where victim testified he gave defendant money after defendant revealed a gun in his waistband and told victim that his life was not worth losing over $100). And given Chatfield's testimony that Finney was attempting to run from the scene behind Chatfield when Green shot at Finney, the jury also was authorized to conclude that Green committed an aggravated assault on Chatfield by firing in his direction.

Although Green questions the credibility of various aspects of Chatfield's

9

testimony, it was for the jury — not this Court — to judge Chatfield's credibility. Moreover, the evidence that both a .45 caliber shell casing and two .380 shell casings were found at the scene, coupled with Chatfield's testimony that Green had a .45 caliber gun and Wilson had a .380 gun, supports a conclusion that both Green and Wilson shot at Chatfield and Finney. And it is not inconceivable that Green killed Finney as part of an attempt to rob him; the jury was authorized to infer that the defendants panicked and thought it better to run rather than pause to search Finney's pockets. The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Green was guilty of the crimes for which he was convicted, and the trial court did not err in denying a directed verdict.

2. Green also appeals on the basis that his trial counsel was ineffective in that counsel failed to move to sever the counts related to the May 9 incident, introduce a certified copy of Chatfield's burglary conviction, seek a jury instruction on impeachment by felony conviction, and argue in closing that Chatfield's conviction rendered his testimony unbelievable. We disagree, finding that Green has not met his burden to show that his case was prejudiced by any of these alleged deficiencies.

To prevail on his ineffectiveness claim, Green "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." Scott v. State, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Where an appellant fails to meet his burden in establishing one prong of the Strickland test, we need not review the other, as a failure to meet either of the prongs is fatal to an ineffectiveness claim. See Lawrence v. State, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010). In order to show prejudice, the defendant must show that a reasonable probability exists that, but for trial counsel's errors, the outcome of the trial would have been different. Strickland, 466 U. S. at 694 (III) (B). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003) (citation and punctuation omitted).

(a) Green first argues that trial counsel was ineffective for failing to move

11

to sever the counts related to the May 9 incident from those related to the May 21 incident. Trial counsel testified at the motion for new trial hearing that he did not file a motion to sever because the trial court already had denied such a motion filed on behalf of co-defendant Wilson. Green argues on appeal that this was unreasonable because his argument for severing the counts was stronger than Wilson's.

Putting aside whether any motion to sever the counts would have been granted, we find that Green has not met his burden to show that he was prejudiced by trial counsel's failure to move to sever. Green makes no particular argument as to how counsel's failure resulted in confusion of the issues or some other prejudice; he merely speculates baldly that the joint trial produced a "smear effect." "[M]ere speculation on the defendant's part is insufficient to establish <u>Strickland</u> prejudice[.]" <u>Pierce v. State</u>, 286 Ga. 194, 198 (4) (686 SE2d 656) (2009); see also <u>Bogan v. State</u>, 249 Ga. App. 242, 245 (2) (b) (547 SE2d 326) (2001) ("A defendant must do more than raise the possibility that separate trials upon the charges against him would have provided him a better chance of acquittal.").

(b) All of Green's other claims of ineffectiveness relate to alleged

shortcomings in counsel's use of Chatfield's prior felony conviction to challenge his credibility. During the defense's cross-examination of Chatfield, Chatfield volunteered that he was on probation, and defense counsel followed up by eliciting Chatfield's testimony that his probation was for a burglary conviction:

> [CHATFIELD]: The only reason I was over at my sister's house because when I first — when I had — When I first got in trouble, you know what I'm saying, because I was — I'm on — you know what I'm saying? I'm on probation.
> Q: Yes, sir.
> A: When I got in trouble and then when I had got out, I was staying over at my sister's because I didn't have nowhere to go.
> Q: You're on probation?
> A: Yes, [sir].
> Q: Is that for a burglary conviction?
> A: Yes, sir.

Green argues on appeal that trial counsel was ineffective for not seeking admission of a certified copy of Chatfield's conviction, not seeking a jury instruction on impeachment by felony conviction, and not raising the conviction in closing. Again, even assuming that trial counsel rendered deficient performance in handling Chatfield's conviction, Green has not met his burden to show that he was prejudiced by any failing of counsel.

Green characterizes the references to Chatfield's probation for burglary

13

during Chatfield's testimony as "so vague and fleeting that they were essentially unnoticeable." He contends that the outcome of the case might have been different if counsel had emphasized Chatfield's conviction via documentary evidence and closing argument. But we reject Green's characterization of the evidence of Chatfield's conviction as "unnoticeable." And although Green points out that the jury would have had possession of a certified copy of Chatfield's conviction during its deliberations if his lawyer had successfully moved for its admission, we cannot say that such documentary evidence, even if emphasized in argument, would have changed the outcome of those deliberations. This is insufficient to show prejudice. See Green v. State, 281 Ga. 322, 323 (2) (638 SE2d 288) (2006) (no prejudice in counsel's failure to comply with reciprocal discovery procedures, resulting in trial court's refusal to allow impeachment of witness by certified copies of his felony convictions, where the jury was informed of witness's criminal history during his testimony and was instructed on the law of impeachment); Ross v. State, 231 Ga. App. 793, 798 (6) (499 SE2d 642) (1998) (no prejudice in failing to impeach witnesses with certified copies of their felony convictions where both admitted to participating in crimes for which the defendant was on trial and one admitted that he was on

14

parole at the time of the crimes).

Green argues that counsel's failure to tender the certified copy of the conviction hurt his defense because trial counsel incorrectly thought this omission precluded him from obtaining a jury instruction on impeachment by felony conviction. But Green cannot obtain a new trial on the ground that his lawyer failed to request such an instruction — whether due to a misunderstanding about evidence law on counsel's part or otherwise — because he cannot show that he was prejudiced by this omission from the charge. The defendants impeached Chatfield in multiple ways. In addition to eliciting Chatfield's testimony that he was on probation for burglary, the defense highlighted inconsistencies between this trial testimony and a prior statement to law enforcement, including as to the type of gun carried by Wilson. The defense also elicited Chatfield's testimony that he failed to summon police on the night of the shooting and that medication he was taking at the time of the shooting sometimes made him "a little sluggish, a little off[.]" The trial court instructed the jury on impeachment generally, and impeachment specifically by disproving the facts to which the witness testified or proof of prior contradictory statements. The trial court also told the jury that, in determining the believability of

witnesses, it "may also consider [the witness's] personal credibility insofar as it may have been shown in your presence and by the evidence." The jury thus was given several reasons to question Chatfield's credibility and instructed on how those factors might properly inform its consideration of the case. Green has not shown that any marginal additional benefit he might have received in having the jury fully instructed on how it might properly consider evidence of Chatfield's prior conviction would have changed the outcome of his trial. See Brown v. State, 289 Ga. 259, 260-261 (2) (710 SE2d 751) (2011) (finding trial court's error in refusing to give impeachment by prior conviction instruction harmless, where evidence of guilt was overwhelming, convicted felon who testified to defendant's jailhouse confession was subjected to lengthy cross-examination as to bias, motivation, and self-interest, and court gave same "personal credibility" instruction given here); see also Hinely v. State, 275 Ga. 777, 781 (2) (c) (573 SE2d 66) (2002) (no prejudice in counsel's failure to impeach co-indictee with a certified copy of her conviction for forgery, where co-indictee testified that she smoked crack cocaine, performed oral sex on the victim in exchange for money, pleaded guilty to his murder, and had been released from a five-month incarceration only a few weeks before the victim's

16

death); <u>Garland v. State</u>, 311 Ga. App. 7, 10-12 (1) (c) (714 SE2d 707) (2011) (no prejudice from counsel's failure to object to trial court's refusal to give jury charge on impeachment by prior felony conviction, where court charged on credibility and witness impeachment generally, and witness acknowledged on the stand that he was testifying pursuant to plea deal and previously had been convicted of various other charges).

<u>Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, and Boggs, JJ., concur.</u>

Decided August 20, 2018 — Reconsideration denied September 10, 2018.

Murder. Bibb Superior Court. Before Judge Christian.

Dennis C. Francis, Jr.; Matthew T. Dale, for appellant.

K. David Cooke, Jr., District Attorney, Sandra G. Matson, Jason M. Martin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.