306 Ga. 455
FINAL COPY

S19A0765. LEWIS v. THE STATE.

PETERSON, Justice.

Freddie Lewis was convicted of malice murder, rape, and burglary in connection with the death of Evelyn Wise.[1] On appeal, Lewis argues that the trial court erred in (1) denying his motion for a directed verdict, (2) denying his motion in limine to exclude DNA

---

[1] The crimes occurred on March 3, 1991. On May 29, 2009, a Fulton County grand jury indicted Lewis for malice murder, felony murder predicated on aggravated assault, felony murder predicated on burglary, felony murder predicated on rape, aggravated assault, burglary, and rape. Following a trial held in September 2010, a jury found Lewis guilty on all charges except felony murder predicated on burglary. The trial court sentenced Lewis to consecutive life sentences for malice murder and rape and a consecutive twenty-year term for burglary. All remaining counts were vacated by operation of law or merged for sentencing purposes. Lewis filed a timely motion for new trial on September 22, 2010, which he amended on March 29, 2017. In October 2017, Lewis filed a pleading "dismissing" his motion for new trial and then filed a notice of appeal. We dismissed his appeal and remanded the case to the trial court on the basis that the trial court had not entered a judgment on Lewis's motion for new trial. See *Heard v. State*, 274 Ga. 196, 197 (552 SE2d 818) (2001) (trial court must enter an order disposing of motion for new trial in order to extend the 30-day deadline to file notice of appeal from entry of judgment).  On remand, the trial court entered an order on December 13, 2018, accepting Lewis's withdrawal of his motion for new trial. Lewis's timely appeal was docketed to this Court's April 2019 term and submitted for a decision on the briefs.

evidence based on inadequate chain of custody, (3) failing to conduct an evidentiary hearing to determine the admissibility of DNA evidence, (4) admitting the statements of a deceased witness, and (5) sentencing him on the aggravated assault, burglary, and rape counts because the statutes of limitations for those counts had expired prior to trial. The trial court committed no error, because the evidence was sufficient to support convictions on the crimes charged, and the DNA evidence, as well as the out-of-court statements by the deceased witness, were properly admitted. Finally, the statute of limitations period was tolled while Lewis's identity was unknown, and so the trial court properly sentenced Lewis. We affirm.

Viewed in the light most favorable to the verdicts, the evidence shows that Mary Wise and her daughter, Evelyn, lived in a townhouse-style apartment near the Vine City MARTA station; Mary slept downstairs, and Evelyn had a room upstairs. On the morning of March 3, 1991, an Atlanta Police Department (APD) officer went to the apartment in response to a 911 call regarding a

2

robbery with an injured person. Mary reported that an unidentified male tried to strangle her in the middle of the night. She said that she had gone to bed sometime around 11:30 p.m. after talking to Evelyn, and was awoken around 1:00 a.m. by noises coming from the upstairs area. After hearing the noises, Mary saw a man run down the stairs. The man jumped on her, wrapped a string around her neck, and began to pull on it. Mary fought off the man, but he then choked her with his hands and smothered her with a pillow, causing her to lose consciousness. When Mary regained consciousness, she noticed that some of her money had been taken. Mary did not get a good look at the assailant because it was dark inside the apartment at the time of the attack. The responding officer observed that Mary had a small bruise on her cheek, dried blood on one side of her face, and some slight discoloration around her neck.

After talking to Mary, the responding officer went upstairs. The officer found Evelyn's dead body lying face-up on the floor in her bedroom. Evelyn had a shoestring wrapped around her neck, her pants had been pulled down, her legs were spread so that her

genitals were exposed, and she had one shoe on. The officer also saw that a flower pot had been placed on an air conditioning unit outside so that someone could access a ledge leading to the open bedroom window. All other entries to the apartment were locked.

An APD detective canvassed the apartment complex, but all potential suspects were ruled out after further investigation. A medical examiner performed an autopsy on Evelyn on March 3, the same day her body was found. The medical examiner observed a ligature mark on the victim's neck, abrasions on her face consistent with an attempt to move the ligature away from her neck, and hemorrhaging around her eyes. He concluded that Evelyn's cause of death was ligature strangulation. Because the medical examiner also suspected that Evelyn was sexually assaulted, he swabbed Evelyn's breasts, vagina, and rectum, and this evidence was sent to the GBI.

A GBI examination revealed the presence of intact and partially intact sperm from the vaginal swabs and partially intact sperm from the rectal swabs. A GBI DNA analyst testified that the

4

presence of intact sperm indicated that the semen was deposited 24 to 36 hours before the swabs were collected, and, based on this evidence, the APD detective concluded that the sexual contact occurred at or near the time of Evelyn's death.

The GBI sent the swabs to the FBI, which had been investigating the murders of four elderly women in the Vine City area. An FBI analyst analyzed the sperm cells from the vaginal swabs of Evelyn, determined that the sperm came from only one person, and concluded that the DNA profile was not a match for any known individuals and was not linked to the crimes being investigated by the FBI. After completing his exams, the FBI analyst returned the swabs to the GBI in September 1991. Because there were no leads to pursue, the APD investigation into Evelyn's murder went into an inactive status.

In 2004, the APD created a Cold Case Squad to investigate homicides having a sexual component by reexamining the rape kits in those cases. The Cold Case Squad made repeated requests to the APD's property section to obtain Evelyn's rape kit, but the kit was

not located until January 2008. A detective then sent the swabs to a private lab for DNA analysis, leading to the creation of a DNA profile. The GBI reviewed the private lab's work, uploaded the profile into a national database of DNA profiles known as CODIS, and issued a report in April 2008 concluding that the DNA profile was a match for Lewis.

Police began investigating Lewis and learned that he had lived in the same apartment complex as Evelyn at the time of her death; Lewis's building was located about 75 yards from Evelyn's. An APD detective interviewed Lewis, who after being read his *Miranda* rights and waiving them, admitted that he knew the victim but did not say that he was in a relationship with her or that he ever had sexual intercourse with her. When the detective asked Lewis for a DNA sample, Lewis grew visibly shaken, became extremely nervous, and began stumbling over his words. The detective took two buccal swabs from Lewis and sent them to the GBI for testing. The DNA from Lewis's swabs matched the DNA from the vaginal swab taken from Evelyn in 1991, thus confirming the CODIS match. During his

investigation, the detective found no evidence that Lewis had a consensual sexual relationship with Evelyn. The evidence showed that Mary never let any men inside the apartment and was very protective of Evelyn because she had an intellectual disability.

1. Lewis argues that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to support his convictions. In particular, he argues that there is no direct evidence that he committed the crimes, the evidence showing the presence of his sperm inside the victim's vagina did not rule out the possibility that he and the victim had consensual sex and someone else committed the crimes, and the DNA identification evidence was suspect because the rape kit went missing for a few years and items within it were not clearly identified. We conclude that there was sufficient evidence to authorize his convictions.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction under *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See *Green v. State*,

7

304 Ga. 385, 387 (1) (818 SE2d 535) (2018). Under this standard, we review whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, but we do not "reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Thomas v. State*, 300 Ga. 433, 436 (1) (796 SE2d 242) (2017) (citation and punctuation omitted).

To sustain a conviction based on circumstantial evidence, former OCGA § 24-4-6, in effect at the time of Lewis's trial, provided that "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[2] The evidence need not exclude every hypothesis save that of guilt, only those that are reasonable, and it is for the jury to determine whether an alternative hypothesis is reasonable. See *Brown v. State*, 304 Ga. 435, 437 (1)

---

[2] This provision of the old Evidence Code was carried forward into the new Evidence Code and is now found at OCGA § 24-14-6.

8

(819 SE2d 14) (2018). We will not disturb the jury's finding in this respect unless the evidence is insupportable as a matter of law. Id.

(a) The evidence was sufficient to sustain Lewis's convictions. The state in which Evelyn's body was discovered (partially undressed with her genitals exposed), her defensive wounds, and her manner of death supported a finding that Evelyn succumbed to strangulation after attempting to fight off an assailant who was raping and strangling her. The evidence also shows that sperm collected from Evelyn came from only one male, Lewis, and the condition of the sperm showed that her death occurred at or near the time of the sexual contact.

Notwithstanding this evidence, Lewis argues that there was a reasonable hypothesis that he had consensual sex with Evelyn and left the apartment before an unknown assailant entered the victim's apartment and committed the crimes charged. But the jury could ☐ and did ☐ reject this hypothesis as unreasonable. There was no evidence that Evelyn had a relationship with any man, much less Lewis, as Mary was very protective of Evelyn. And despite admitting

9

to police that he knew Evelyn, Lewis never said that he had a relationship with Evelyn or had consensual sex with her. The jury was therefore authorized to reject Lewis's hypothesis. See *Daniels v. State*, 298 Ga. 120, 123 (1) (779 SE2d 640) (2015) (jury authorized to reject theoretical possibility that the defendant had consensual sexual intercourse with the victim within 72 hours of her murder and sometime later an unknown assailant also had sexual intercourse with the victim and murdered her without leaving a trace of DNA evidence recoverable through sexual assault evidence kit).

(b) To the extent Lewis challenges the integrity of the DNA identification evidence based on an insufficient chain of custody of the rape kit, this claim fails. The medical examiner who took the swabs from the victim testified that he sealed the items before sending them to the GBI Crime Lab. Witnesses from the GBI, the FBI, and the private lab that tested materials from the rape kit over the years all testified that the materials were sealed and showed no signs of tampering when they were received, and the witnesses

resealed the materials after performing DNA tests. Although the APD did not locate the items for several years after the APD Cold Case Squad first requested them, there were no signs of tampering when the rape kit was finally located in 2008, and there was no evidence the rape kit was removed from the APD's property room during that time.

Given this evidence, the State established a reasonable certainty that the original victim swabs were the same evidence that was tested. See, e.g., *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999) ("When blood samples are handled in a routine manner and nothing in the record raises a suspicion that the blood sought to be admitted is not the blood tested, the blood is admissible and the circumstances of each case need only establish reasonable assurance of the identity of the sample." (citation and punctuation omitted)). "Absent affirmative evidence of tampering, mere speculative doubt as to the handling of [the] evidence" is a matter for the jury to resolve. Id. (citation and punctuation omitted). The jury clearly resolved this issue adversely to Lewis, and it was

authorized to do so by the evidence presented. See *Bates v. State*, 293 Ga. 855, 855 (1) (750 SE2d 323) (2013) ("It is the role of the jury, not this Court, to weigh the evidence and determine witness credibility."); *Whitaker v. State*, 291 Ga. 139, 140 (1) (728 SE2d 209) (2012) (the resolution of evidentiary conflicts "adversely to the defendant does not render the evidence insufficient" (citation and punctuation omitted)).

2. Lewis raises two arguments on appeal regarding the admissibility of the DNA evidence. Neither of his arguments has merit.

(a) Challenging the sufficiency of the State's chain of custody over the swabs taken from Evelyn's body, Lewis argues that the trial court erred in denying his motion in limine to exclude the DNA evidence obtained from those materials. We disagree.

On the morning of the first day of Lewis's trial, as the jury was about to be selected, Lewis informed the trial court that he had a pending motion in limine, which he had filed a few days prior. Lewis argued that the State's DNA evidence should be excluded because

12

the State would be unable to establish an adequate chain of custody because it could not show the location of the evidence from September 1991 (when the GBI received the swabs from the FBI) until January 2008 (when the APD located Evelyn's rape kit and sent it to the Cold Case Squad). The trial court asked Lewis whether he had any evidence that someone had tampered with the rape kit, and Lewis conceded that he did not, noting that there was no evidence about the location of the rape kit. The trial court remarked that the motion should have been filed sooner and that it would have been helpful to have some testimony on the issue in order to make a preliminary determination. After hearing the parties' arguments, the trial court denied Lewis's motion in limine but noted that the State would have to lay a proper foundation at trial.

Lewis complains about the trial court's pretrial ruling, arguing that the court should have "made a finding that would have uncovered the problem with the chain of custody and would have exposed the tests, or lack thereof, of the techniques and procedures that were valid and were capable of producing reliable results." It is

not clear what "finding" Lewis wanted the court to make. In any case, he has not shown that the trial court's ruling was erroneous.

A party's motion in limine to exclude evidence as inadmissible "should be granted only if there is no circumstance under which the evidence is likely to be admissible at trial." *Grant v. State*, 305 Ga. 170, 172 (3) (824 SE2d 255) (2019) (citation and punctuation omitted). Given this framework, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995). We review a trial court's denial of a motion in limine for an abuse of discretion. *Grant*, 305 Ga. at 172 (3).

Here, the DNA evidence was certainly relevant to the issues in the case. Indeed, as described above in Division 1, it was *the* critical piece of evidence in this case. Lewis's primary challenge regarding chain of custody is that APD could not locate the rape kit for several years when the Cold Case Squad wanted to retest it. Lewis raised the chain of custody issue on the eve of trial and presented no evidence that anyone had tampered with the rape kit. The State

14

argued that it would present testimony at trial establishing that the swabs in the rape kit were the same ones that were collected from the victim. Given this assurance (which was later fulfilled), Lewis could not establish a circumstance in which the evidence would be ruled inadmissible. His argument raised only a bare speculation of tampering, which was an insufficient basis to exclude the evidence. See *Hurst v. State*, 285 Ga. 294, 296 (2) (676 SE2d 165) (2009) ("When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight." (citation and punctuation omitted)). Therefore, the trial court did not abuse its discretion in denying his motion in limine.

(b) Lewis's next challenge to the admissibility of the DNA evidence is based on the trial court's failure to hold an evidentiary hearing to determine whether the procedures used in this case met the standard set forth in *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982). But in challenging the admissibility of the DNA evidence, Lewis raised only an objection related to the chain of custody. He never argued that a *Harper* hearing was required prior

15

to allowing the State's experts to testify about the DNA evidence. Because Lewis failed to raise a *Harper* objection below, his claim is not preserved for appeal. See *Whatley v. State*, 270 Ga. 296, 299 (6) (509 SE2d 45) (1998) (failure to object that any of the scientific evidence was unreliable or that any testing procedure was improper waived issues on appeal (citing *Harper*, 249 Ga. at 533 (10)).[3]

3. Lewis argues that the trial court erred in denying his motion to "dismiss" the statements of Mary Wise, who passed away four months after Evelyn was killed. Lewis argues that the admission of Mary's statements to police violated his Sixth Amendment right to confront witnesses, but Lewis did not preserve this argument below.

A review of the record reveals that Lewis never moved to suppress or otherwise exclude Mary's statements.[4] His complaint about not being able to cross-examine Mary was made in connection

---

[3] Plain error review for this issue is not available to Lewis because he was tried under the old Evidence Code. See *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012).

[4] The only statements Lewis sought to suppress prior to trial were his own.

with his argument in support of his motion to dismiss the indictment on due process grounds, specifically arguing that the 18-year pre-indictment delay prevented him from interviewing or cross-examining Mary. When the challenged testimony was introduced at trial, Lewis made no objection, and in fact elicited additional hearsay statements made by Mary. Because Lewis did not move to exclude Mary's hearsay statements prior to trial or object to the relevant testimony on Confrontation Clause grounds, having in fact elicited hearsay statements about which he now complains, his claim presents nothing for review. See, e.g., *Johnson v. State*, 292 Ga. 785, 787-788 (3) (741 SE2d 627) (2013) (for cases decided under the old Evidence Code, a party had to make an objection and obtain a ruling before or as the evidence was admitted in order to preserve an alleged error).

4. Lewis argues that the trial court erred in sentencing him on the burglary, aggravated assault, and rape counts because the statutes of limitations for those crimes had lapsed prior to the indictment. His argument fails. Lewis's challenge to the aggravated

assault conviction is moot because that count has been merged. See

*Long v. State*, 287 Ga. 886, 888 (1) (700 SE2d 399) (2010). The

burglary and rape charges were not barred by the applicable

statutes of limitations because the limitations periods were tolled.

In criminal cases, the period of limitations runs from the

commission of the offense to the date of the indictment. See *Riley v.*

*State*, 305 Ga. 163, 167 (3) (824 SE2d 249) (2019). Rape is subject to

a seven-year statute of limitations, and burglary is subject to a four-

year limitations period. OCGA § 17-3-1 (b) and (c).[5] The State has

the burden at trial to prove "that a crime occurred within the statute

of limitation[s], or, if an exception to the statute is alleged, to prove

that the case falls properly within the exception." *Harper v. State*,

292 Ga. 557, 563 (3) (738 SE2d 584) (2013) (citation and punctuation

omitted).

---

[5] The limitations statute was amended in 2012 to provide that the prosecution of certain offenses, such as rape, may be commenced at any time when DNA evidence is used to establish the identity of the accused. See Ga. L. 2012, pp. 899, 923, § 4-1. This provision, however, would be inapplicable to the rape charge here, because the amendment provided that "any offense occurring before July 1, 2012," which is the circumstance here, "shall be governed by the statute in effect at the time of the offense." Id., p. 949, § 9-1.

Here, the burglary and rape offenses would be barred by the applicable statutes of limitations unless an exception tolled the period. The crimes occurred in March 1991, and Lewis was indicted in May 2009. The State alleged an exception to the statutes of limitations, asserting that the statutes were tolled because Lewis's identity was unknown until April 2008. See OCGA § 17-3-2 (2) (a statute of limitations is tolled during any period in which the "person committing the crime is unknown or the crime is unknown"); see also *Jenkins v. State*, 278 Ga. 598, 604 (1) (B) (604 SE2d 789) (2004) (the State must plead an exception to the statute of limitations in the indictment if it is relying on one). The person-unknown exception applies if the State has not obtained sufficient information to establish probable cause to arrest a particular suspect. See *Riley*, 305 Ga. at 169-170 (3).

The evidence introduced at trial was sufficient for the jury to find that the person-unknown exception applied to toll the applicable statutes of limitations for burglary and rape. The evidence showed that the APD placed the case into inactive status

19

in September 1991 after initial suspects were ruled out and the FBI was unable to identify a suspect based on a DNA profile created from the sperm extracted from the victim's vaginal swab. The case was not actively worked again until the rape kit was located and tested in 2008, leading to the creation of a DNA profile in April 2008 that identified Lewis as the likely assailant. Lewis was indicted in May 2009, eleven months after his identity became known. Therefore, the limitations periods for the burglary and rape offenses had not expired, and the trial court did not err in sentencing Lewis for these offenses.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Fulton Superior Court. Before Judge Russell.

*Ronald G. Shedd*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.