**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2024**

# In the Court of Appeals of Georgia

A23A1661. LOGAN v. THE STATE.

RICKMAN, Judge.

Durwin Logan, a pharmacist with the Effingham County Health System, was charged in a multi-count indictment with numerous counts of theft in obtaining a controlled substance, sale of a controlled substance, and money laundering. A jury acquitted Logan of money laundering but deadlocked on the remaining counts. The trial court entered a judgment of acquittal on the money laundering charges and declared a mistrial as to the others, and the State subsequently re-indicted Logan on the deadlocked charges. Logan filed two pleas in bar, asserting that the new indictment was barred on the grounds of both double jeopardy and the statute of limitations. He further filed a motion to dismiss the indictment based upon prosecutorial misconduct

and filed a motion pursuant to *Brady v. Maryland*,[1] seeking access to communications between the State and its expert witness; the trial court denied both. Logan contends that the trial court erred by denying each of his motions. We disagree and affirm.

The undisputed facts are as follows. On June 7, 2021, Logan was charged with numerous criminal offenses, including theft in obtaining a controlled substance, sale of a controlled substance, and money laundering ("Indictment I"), based upon allegations that during his employment as a pharmacist for the Effingham County Hospital, he fraudulently ordered more than 75,000 pills of Oxycodone and/or Rxicodone; forged logbook pages with fake prescription numbers and amounts; and had a significant amount of unaccounted for income. Logan filed a demurrer to Indictment I, asserting in part that it did not sufficiently narrow the date ranges for the charges alleged.

As a result, the State re-indicted Logan on 49 counts of theft in obtaining a controlled substance, 49 counts of sale of a controlled substance, and seven counts of money laundering ("Indictment II").[2] Following a jury trial on Indictment II, the jury

---

[1] 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1973).

[2] The trial court issued an order of nolle prosequi on Indictment I. Indictment II included one count of violation of RICO and one count of forgery in the second

acquitted Logan on the seven counts of money laundering, but deadlocked on the remaining charges. The trial court entered a judgment of acquittal as to money laundering and declared a mistrial as to the remaining counts.

The State then indicted Logan a third time ("Indictment III"). Indictment III contained only those charges on which the jury deadlocked from Indictment II — namely, 49 counts of theft in obtaining a controlled substance and 49 counts of sale of a controlled substance. Logan filed numerous motions seeking to dismiss Indictment III, including two pleas in bar: one asserting that his prosecution was barred by double jeopardy, and the other alleging that all but four counts of the indictment were barred by the statute of limitations. Logan also moved to dismiss Indictment III based on allegations of prosecutorial misconduct due to ex parte communications between the State and the trial court leading up to the trial on Indictment II. Finally, Logan filed a *Brady* motion seeking to discover, in part, communications between the prosecutor and the State's expert witness.

Following a hearing, the trial court denied each of Logan's motions. This appeal followed.

---

degree, but those counts were disposed of prior to trial.

1. Logan argues that the trial court erred by denying his pleas in bar, one predicated on double jeopardy and the other predicated on the statute of limitations. We will address each in turn.

(a) Logan contends that double jeopardy bars his prosecution on Indictment III because the State failed to request an order of nolle prosequi on Indictment II before presenting the later indictment. In support of his argument, Logan relies on our case law regarding superseding indictments:

> A grand jury is not prevented from returning another indictment against an accused, even though an indictment is pending, where there has been no jeopardy upon the first indictment, and the existence of a prior indictment generally is not grounds for quashing the second indictment, although the state may be required to elect upon which indictment it will proceed.

(Citation and punctuation omitted.) *McKinney v. State*, 261 Ga. App. 218, 219 (1) (582 SE2d 463) (2003). Because jeopardy attached to Indictment II, Logan asserts his prosecution is now barred.

"The constitutional prohibition against double jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." (Citation and punctuation omitted.) *Zellner v. State*,

4

353 Ga. App. 527, 529 (838 SE2d 613) (2020); see U.S. Const. Amend. V; *United States v. DiFrancesco*, 449 U.S. 117, 127 (III), (101 SCt 426, 66 LE2d 328) (1980). It "serves to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws." (Citation and punctuation omitted.) *Johnson v. State*, 361 Ga. App. 43, 49 (2) (861 SE2d 660) (2021). Thus, "after a jury is impaneled and sworn, jeopardy attaches, and the defendant normally has a right to have his trial completed by that particular tribunal." (Citation and punctuation omitted.) Id. Significantly, however, "the retrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not constitute double jeopardy when there is a manifest necessity for declaring the mistrial[,]" and a hopelessly deadlocked jury constitutes such a manifest necessity. (Citation and punctuation omitted.) Id. at 50 (2).

Logan concedes that the State is authorized to retry him for the criminal charges on which the jury was hopelessly deadlocked. And he does not dispute that Indictment III contains only those charges. Rather, he asserts that because the State presented a clean indictment — i.e., removed the acquitted charges and carried over the

5

deadlocked charges — without first having obtained an order of nolle prosequi on the deadlocked charges, double jeopardy now bars a retrial.

The State's presentation of a clean indictment to the grand jury in preparation for a retrial on the deadlocked charges has not subjected Logan to the hazards of being convicted more than once for the same offenses. Thus, this scenario simply does not present the danger that the concept of double jeopardy was designed to protect against, and the trial court did not err by denying Logan's plea in bar on this basis. See generally *Johnson*, 361 Ga. App. at 49-51 (2); *Thomas v. State*, 356 Ga. App. 817, 819-820 (847 SE2d 662) (2020); see also *Zant v. Redd*, 249 Ga. 211, 213-214 (2) (290 SE2d 36) (1982).

(b) Logan asserts that the trial court also erred by denying his plea in bar premised on the statute of limitations. He contends that all but four of the charges against him are time-barred.

The statute of limitations for the crimes with which Logan has been charged is four years. OCGA § 17-3-1 (c). "In criminal cases, the period of limitations runs from the commission of the offense to the date of the indictment." *Lewis v. State*, 306 Ga. 455, 462 (4) (831 SE2d 771) (2019). The limitation period governing a prosecution,

however, "does not include any period in which . . . [t]he person committing the crime is unknown or the crime is unknown." OCGA § 17-3-12 (2); see *Riley v. State*, 305 Ga. 163, 169 (3) (824 SE2d 249) (2019) ("[A] statute of limitation is tolled with respect to an 'unknown' person until the State possesses sufficient evidence to authorize the lawful arrest of that person for the crime charged.").

The facts pertinent to this analysis are undisputed. The State discovered the crimes and/or Logan's identity on September 1, 2017, a fact that was specifically alleged in the indictment. Indictment II was returned on July 9, 2021, within four years of the State's discovery.[3] Thus, prosecution of the alleged crimes are not barred by the statute of limitations and the trial court did not err by denying Logan's plea in bar on that basis. See *Lewis v. State*, 306 Ga. at 462-463 (4); *Brooks v. State*, 365 Ga. App. 711, 721-723 (4) (880 SE2d 226) (2022). Logan's argument that those crimes that were not alleged to have been committed within four years of the return of the operative indictment (when the crimes and/or Logan's identity were unknown) is not supported by statutory or case law.

---

[3] Logan does not contest that Indictment III relates back to the return date of Indictment II for statute of limitation purposes. See OCGA § 17-7-3.

2. Logan's remaining enumerations seek redress for alleged transgressions by the State during the trial on Indictment II. In addition to being moot, these arguments lack merit.

(a) First, Logan argues the trial court erred by denying his motion to dismiss Indictment III based upon alleged prosecutorial misconduct because, in accordance with a standing order, the State submitted to the trial court in advance of the trial a PowerPoint presentation it intended to use during its opening argument.[4] Even assuming that an act done in accordance with a standing trial court order could amount to prosecutorial misconduct, Logan cannot show that he was harmed by the submission, and the order has since been rescinded. See generally *Weems v. State*, 268 Ga. 142, 143 (2) (485 SE2d 767) (1997) (recognizing that, with a narrow exception, prosecutorial misconduct in one trial does not preclude a retrial against a criminal defendant when a retrial is otherwise authorized).

---

[4] The submission was made pursuant to a standing order governing the use of digital media presentations during opening statements that was "entered with the intention of preventing improper material being published to a jury without any meaningful way to cure, balanced against the need to protect work product." The order has since been rescinded.

(b) Logan further argues that the trial court erred by denying his *Brady* motion seeking to discover communications between the prosecutor and the State's expert witness because of changes the expert made to her report prior to the trial. But "correspondence from an attorney to an expert is protected from disclosure to the extent that the correspondence contains the opinion work product of the attorney." *McKinnon v. Smock*, 264 Ga. 375, 378 (2) (445 SE2d 526) (1994). To the extent the State's expert made changes to her report, both versions were available for and supplied to Logan, and Logan was provided the opportunity to engage in a thorough and sifting cross-examination about the changes during trial. The trial court did not err by denying Logan's *Brady* motion.

*Judgment affirmed. Dillard, P. J., and Pipkin, J., concur.*