305 Ga. 163
FINAL COPY

S18A1048. RILEY v. STATE.

BETHEL, Justice.

Following his conviction for the murder of Pauline McCoy, as well as his convictions for burglary and possession of a knife during the commission of a felony, Jimmy Lee Riley appeals from the denial of his motion for a new trial.[1] Riley argues that the trial court should have allowed certain expert testimony and that the trial court erroneously found that the "person unknown" exception tolled the statute of limitation on his non-murder charges under OCGA § 17-3-2 (2). Because we determine that the trial court did not abuse its discretion in

---

[1] McCoy was killed on December 20, 1986. On August 28, 2012, a Richmond County grand jury indicted Riley for malice murder, felony murder, burglary, and possession of a knife during the commission of a crime. After an October 2013 trial, a jury found Riley guilty of all four counts. Riley was sentenced to life imprisonment for murder, twenty years consecutive for burglary, and five years consecutive for possession of a knife during the commission of a crime. Although the trial court ostensibly "merged" the felony murder count into the malice murder count, the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Riley filed a motion for new trial on November 7, 2013, and amended that motion on February 10, 2016. Following a hearing, the trial court denied the motion (as amended) on February 19, 2016. Riley filed a notice of appeal on March 4, 2016, and this case was docketed to the August 2018 term of this Court and submitted for a decision on the briefs.

disallowing expert testimony, we affirm Riley's murder conviction.  However, we vacate the trial court's judgment with respect to Riley's convictions for burglary and possession of a knife during the commission of a felony and remand the case for the trial court to consider, under the facts of this case, when the State had sufficient information to establish actual knowledge of Riley as the "person committing th[ose] crime[s]," OCGA § 17-3-2 (2), thus ending the tolling of the statute of limitation.

1.   Viewed in the light most favorable to the verdicts, the evidence presented at trial shows the following.  On December 21, 1986, a Richmond County Sheriff's Deputy found Pauline McCoy dead, lying face down on the floor of her kitchen surrounded by a large amount of blood. She had been beaten and stabbed, and an autopsy revealed that the cause of death was blunt force trauma to her chest. She had 15 stab wounds to her body, including defensive wounds that suggested she attempted to ward off her attacker. McCoy also had a neck hemorrhage, indicating that she had been strangled.

Officers at the crime scene found a butcher knife near McCoy's body. Officers identified an open bathroom window as the killer's likely entry and exit point. Near this bathroom window, officers observed dried blood forming a

2

fingerprint on the house's siding. Officers removed the siding and sent it to the GBI crime lab for processing. The single fingerprint was the only physical evidence that investigators had to link a suspect to the crime scene.

Officers questioned McCoy's neighbors, one of whom stated that the previous evening, a black man she did not know (but whom she had seen standing near McCoy's house on occasion) asked her for a beer. The man appeared sweaty, and he was shaking. Another neighbor suggested to officers that he thought Riley, whom the neighbor had regularly seen standing near McCoy's house, could have possibly been involved. Riley's name was therefore included on a list of 12 to 15 possible suspects who lived nearby. Police also interviewed Riley's mother about him, collected some of Riley's clothing from her, and submitted Riley's fingerprint for comparison along with the fingerprints of five other suspects. But because the fingerprint collected at the crime scene was only a partial fingerprint, and due to the limitations of available technology at the time, the GBI crime lab was unable to match the fingerprint with any suspects.

A quarter-century later, in 2012, improved fingerprinting techniques allowed investigators to definitively match the bloody fingerprint to Riley.

Shortly thereafter, Riley was arrested and charged with murder, felony murder, burglary, and possession of a knife during the commission of a felony.

Prior to trial, Riley filed a plea in bar arguing that the charges for burglary and possession of a knife during the commission of a felony were barred by the statute of limitation. The trial court found that the person unknown exception applied and denied the plea in bar.

Riley also filed a motion in limine to exclude fingerprint evidence. In support of his motion, he attempted to admit Professor Jessica Gabel as an expert witness with respect to fingerprint evidence. The State objected, arguing she was unqualified based on her lack of experience as a fingerprint analyst or examiner. Riley argued that Gabel was qualified based on her research into the reliability of forensics, her status as a professor who taught forensics to law students, and her work in publishing and speaking on forensic science. The trial court sustained the State's objection. At trial, Riley again attempted to have Gabel testify, but the trial court excluded her testimony. On October 23, 2013, Riley was convicted of all four counts.

Riley does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in

murder cases, we have reviewed the record and conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Riley guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979); see also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citations and punctuation omitted)).

2. Riley argues that the trial court erred in failing to admit Gabel as an expert in forensic science. We disagree.

> To qualify as an expert generally all that is required is that a person must have been educated in a particular skill or profession; [her] special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status. The trial court has broad discretion in accepting or rejecting the qualifications of the expert, and its judgment will not be disturbed on appeal absent an abuse of discretion.

(Citations and punctuation omitted.) *Allen v. State*, 296 Ga. 785, 790 (7) (770 SE2d 824) (2015).

Riley argues on appeal that the trial court should have permitted Gabel to be qualified as a general "forensic expert." However, Riley attempted to admit Gabel as an expert specifically in fingerprint evidence at a pretrial hearing.

5

Because the trial court determined that she was not qualified to testify as an expert on fingerprint analysis, Riley then attempted to admit Gabel as a general forensic expert at trial with the intention of questioning her particularly on fingerprint evidence and examination. The trial court denied Riley's request, finding that such testimony would be within the purview of a fingerprint expert — and the trial court had already determined that Gabel was not so qualified.

At the hearing on Riley's motion in limine, Gabel conceded that she was not a fingerprint examiner, had no training as a fingerprint analyst apart from a single semester during her undergraduate studies, had not analyzed fingerprints professionally as a lead analyst, and had not conducted scientific or empirical studies on fingerprint evidence specifically. Under these circumstances, we cannot say the trial court abused its discretion in declining to admit Gabel as an expert witness with respect to fingerprint evidence. Compare *McCoy v. State*, 237 Ga. 118, 119 (227 SE2d 18) (1976) (officer sufficiently qualified to testify as expert on fingerprint evidence where officer had relevant formal training and years of on-the-job experience); *Tanner v. State*, 228 Ga. 829, 830-831 (4) (188 SE2d 512) (1972) (expert witness was qualified to opine on fingerprint comparisons where witness had completed 80 hours of courses on the topic, had

6

a year-and-a-half of training, and had experience comparing fingerprints).  Nor has Riley made a showing of what relevance Gabel's general forensic testimony would have had if she could not testify regarding the fingerprint evidence.

3.  Riley next argues that the trial court erred in finding that the statute of limitation on his non-murder charges was tolled due to the person unknown exception.  Because we hold that the trial court must consider when the State had sufficient information to establish probable cause to arrest Riley for the non-murder offenses, we vacate the trial court's judgment on these counts and remand the case for further consideration of this issue.

"In criminal cases, the statute of limitation runs . . . from the time o fthe criminal act to the time of indictment."  *Hall v. Hopper*, 234 Ga. 625, 626 (1) (216 SE2d 839) (1975).  The purpose of a statute of limitation

> is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past[.]

(Citation and punctuation omitted.)  *Womack v. State*, 260 Ga. 21, 22 (4) (389 SE2d 240) (1990).  See also *Jenkins v. State*, 278 Ga. 598, 604 (1) (B) (604

7

SE2d 789) (2004) (statutes of limitation exist "for the protection of the defendant"). For these reasons, "criminal limitations statutes are to be liberally interpreted in favor of repose." (Citations and punctuation omitted.) *Toussie v. United States*, 397 U. S. 112, 115 (90 SCt 858, 25 LE2d 156) (1970). By contrast, statutory provisions providing for the tolling of a statute of limitation are designed to expand the exposure to criminal prosecution beyond the specified fixed period. Notably, "the burden is unquestionably upon the state to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception." (Citation and punctuation omitted.) *Harper v. State*, 292 Ga. 557, 563 (3) (738 SE2d 584) (2013). Burglary and possession of a knife during the commission of a felony are both subject to a four-year statute of limitation. See OCGA § 17-3-1 (c).

Here, it is undisputed that the State did not indict Riley on the non-murder charges until more than 26 years after the commission of the offenses. Because the applicable statute of limitation for burglary and possession of a knife during the commission of a felony is four years, Riley properly presented a prima facie case that the statute of limitation had run. See OCGA § 17-3-1 (c). Thus, our

8

analysis focuses on whether the statute of limitation was tolled by the person unknown exception.

Under OCGA § 17-3-2 (2), the "person unknown" exception to the general limitation periods allows tolling of the statute of limitation when "[t]he person committing the crime is unknown or the crime is unknown[.]" We have held that the tolling period ends when the State has actual, as opposed to constructive, knowledge of both the defendant's identity and the crime. *Higgenbottom v. State*, 290 Ga. 198, 204 (3) (719 SE2d 482) (2011). See also *Womack*, 260 Ga. at 22 (3) (knowledge of victim can be imputed to the State). However, the amount and quality of knowledge that the State must possess in order to have actual knowledge of the "person committing the crime" remains undefined, and there is relatively little case law interpreting OCGA § 17-3-2 (2) that can guide us. Moreover, we have found little scholarly assessment of the standard, and we have not found sister jurisdictions with sufficiently similar tolling language to constitute persuasive authority on the question. Thus, we find ourselves sailing into uncharted waters. In doing so, we carry with us familiar tools to determine the meaning of this statutory provision and to plot a course that can be safely followed.

First, we "afford the statutory text its plain and ordinary meaning," thus viewing "the statutory text in the context in which it appears" and reading "the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would."  (Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).  Further, this Court may construe statutes to avoid absurd results, although we do not have the authority to rewrite statutes.  See *Allen v. Wright*, 282 Ga. 9, 12 (1) (644 SE2d 814) (2007).  Lastly, we must presume that statutory language has some substantive meaning.  See *Inagawa v. Fayette County*, 291 Ga. 715, 717 (1) (732 SE2d 421) (2012).

Here, affording the statutory language its ordinary meaning can yield multiple understandings. OCGA § 17-3-2 (2) tolls the statute of limitation when the "person committing the crime is unknown or the crime is unknown[.]"  The basic definition of "unknown" is "not known," — specifically "not in the knowledge, understanding, or acquaintance of someone[.]" Webster's New World Dictionary 1553 (2d College ed. 1980).  Thus, we must consider when a person ceases to be "unknown" under the statute and becomes "known."

On the one hand, OCGA § 17-3-2 (2) could be read to mean that the

10

"person committing the crime" only becomes "known" once the individual has been convicted. Prior to that point, the individual is not truly "known" beyond a reasonable doubt to be the individual "committing the crime." However, such an interpretation would render the statute of limitation functionally useless. Further, as statutes of limitation must be liberally construed in favor of repose, it would not be proper to read OCGA § 17-3-2 (2) as allowing the statute of limitation to be tolled until conviction. "Such a broad interpretation of the tolling period would permit the exception to swallow the rule." *Jenkins*, 278 Ga. at 603 (1) (A).

Alternatively, OCGA § 17-3-2 (2) could be read to mean that a person can be considered "known" where the police are merely aware of the individual's existence. Under such a reading, being a person who was just tangentially known to the State, even outside the context of a criminal investigation (e.g., as the station postman), would start the statute of limitation running. Further, under this reading, a person would be considered "known" to the State where the State had only a mere scintilla of knowledge linking the person to the criminal investigation — such as when the person's name appears on a list of potential suspects as one of hundreds of "tips" called into police. Such a

11

reading fails to give meaningful effect to both the statute of limitation and the tolling provision.

Accordingly, we must seek an interpretation that does allow some useful meaning for both the statute of limitation and the tolling provision. In doing so, we arrive at the following interpretation, and read OCGA § 17-3-2 (2) to mean that a statute of limitation is tolled with respect to an "unknown" person until the State possesses sufficient evidence to authorize the lawful arrest of that person for the crime charged. See *Jenkins*, 278 Ga. at 603 (1) (A) (person unknown exception did not apply where the State had significant other evidence pointing to defendant's identity as the alleged perpetrator within a short time after the crimes). Compare *Beasley v. State*, 244 Ga. App. 836, 836-840 (536 SE2d 825) (2000) (person unknown exception applied where police had no suspects and the only evidence was a fingerprint lifted from the scene of a burglary, which went unmatched until being run through a fingerprint database over four years later). The amount of actual knowledge required to lawfully arrest an individual is the familiar "probable cause" standard. "The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility." (Citation and punctuation omitted.)

12

*Firsanov v. State*, 270 Ga. 873, 875 (3) (513 SE2d 184) (1999). Thus, when a defendant makes a prima facie case that the statute of limitation has expired, the State has the burden of proving that it lacked probable cause to arrest the defendant for a time sufficient to deem the indictment or other charging document timely.

This interpretation provides meaning to both the statute of limitation and the tolling provision. It focuses on the actual knowledge of the State and limits exposure when the State does not or cannot close a case within the limitation period after obtaining probable cause to arrest a suspect.

The trial court here did not engage in this analysis.[2] Therefore, we vacate the trial court's judgment on Riley's non-murder charges, and we remand the case for the trial court to consider, under the legal standard articulated herein and the facts of this case, when the State had sufficient information to establish probable cause to arrest Riley for the non-murder offenses and to proceed accordingly.

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

---

[2] Nor would an examination of the statutes or our case law have expressly pointed the trial court to such a requirement.

Decided February 18, 2019.

Murder. Richmond Superior Court. Before Judge Brown.

Fleming & Nelson, Kurt A. Worthington, for appellant.

Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.