**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 20, 2022**

# In the Court of Appeals of Georgia

A21A1675. THE STATE v. MCCLENDON.

PINSON, Judge.

Rhonda Dee McClendon, an accountant, was indicted on 13 counts of theft by taking for withdrawing funds from a client's bank accounts. She filed a plea in bar, contending that the charges were barred by the statute of limitation because the indictment issued more than four years after the alleged crimes were committed. The trial court granted the plea in bar, and the State now appeals under OCGA § 5-7-1 (a) (3). The State argues that the limitation period was tolled because McClendon's identity as the thief was not known until several years after the alleged crimes were committed. We conclude, however, that the State was chargeable with knowledge, more than four years before McClendon was indicted, of facts sufficient to support

probable cause to arrest McClendon for the thefts. McClendon's indictment thus issued after the limitation period expired, so we affirm.

Background

The indictment here issued on November 13, 2020. In it, Rhonda McClendon, a certified public accountant, was charged with withdrawing funds, "unlawfully and in breach of her fiduciary obligation," from accounts belonging to John Bone and his company, Maritime Sales Leasing, Inc., over a period of a few months from March to July 2015.

When these alleged thefts occurred, the undisputed evidence shows that McClendon was acting as Bone's personal and corporate accountant. The parties had a longstanding business relationship, dating back about 15 years.

In June 2015, Bone was contacted by his bank about irregular transactions involving checks apparently signed by McClendon and made payable to business entities associated with her. Although McClendon had signature authority on Bone's accounts, the withdrawals—which totaled nearly $300,000—were unusually large for the time period they spanned. Later investigation revealed that many of these checks did not match up with any corresponding invoice from McClendon's firm.

After the bank contacted Bone, he contacted McClendon. McClendon denied any knowledge about the transactions. She told Bone that she had signed a number of blank checks of his and put them in her firm's safe, to be used only if a check was needed at a time when neither Bone nor McClendon was available to sign. She posited that one of her employees must have "gotten those checks out of the safe and made them out and deposited them in her various accounts to cover up some other form of theft that was taking place in her office." She promised to find out who was responsible and to repay Bone all funds that were not payment for services.

McClendon's denials, apologies, and promises are documented in a series of emails exchanged between McClendon and Bone in July 2015. In an email on July 14, 2015, she wrote that she had "discovered who the thief [was]" and that this employee "was taking my money, and when there wasn't enough, she went to the safe and took presigned checks from your account to provide what she needed to cover her theft." McClendon wrote that she had fired the employee and intimated that she planned to press charges. She continued promising she would "do whatever it takes" to resolve the situation. In a later email, McClendon said she had "turned everything over to [a] forensic accountant" in Atlanta and retained one or more firms "in DC"

3

"to get to the bottom of this." She also said she "[was] not accusing or positing anything until [she had] facts" but that she "fully intend[ed] to make [Bone] whole."

Bone was skeptical. In a July 21, 2015, email, Bone told McClendon:

The bottom line here is that these checks were made out to you, signed by you and deposited into your account. Almost 300k in five months out of my account into your account. . . . Whatever happened in your office is not my concern and is your responsibility. I find it hard to believe that you left pre-signed checks on all four of my accounts where someone else had access to them and then that someone made them out to you or your firm and then deposited them into your account. It's like reverse fraud or something. Doesn't make sense.

Bone went on in the email to tell McClendon that she should be focusing on "how and when you are going to pay this back . . . as I do not think that you would want to face a legal challenge on this mess." Despite the situation, however, McClendon continued to work for Bone for some period of time thereafter.

More than a year after the withdrawals were discovered, Bone hired counsel. In June 2017, Bone sued McClendon and several corporate entities ostensibly associated with her. In June 2018, McClendon was deposed, and Bone and his counsel, David Mecklin, learned that McClendon had withheld documents and information about certain bank accounts she held. After McClendon continued to

4

resist producing these bank records, Mecklin obtained them through third-party discovery in September and October 2018. Mecklin's review revealed that some of Bone's funds had ultimately been transferred into a personal account belonging to McClendon. Based on this revelation and other information gained during discovery, Mecklin reported the matter to law enforcement in October 2018.

McClendon was initially indicted on September 4, 2019, on two counts of theft by taking. McClendon filed a plea in bar, contending that the indictment was time-barred by the four-year statute of limitation for theft by taking by a fiduciary.[1] In November 2019, following a hearing, the trial court denied the plea in bar.[2] But in April 2020, the trial court granted a demurrer and quashed the indictment, finding that the charges were not pled with sufficient specificity.

McClendon was re-indicted on November 13, 2020. Each of the 13 counts alleged a separate unauthorized withdrawal, the first occurring on March 9, 2015, and the last occurring on July 6, 2015. As to each count, the indictment alleged that "the

---

[1] See OCGA §§ 17-3-1 (c) (providing for limitation period of four years for felonies other than those specifically listed or otherwise excluded); 16-8-12 (a) (3) (classifying theft by taking as a felony if committed "by a fiduciary in breach of a fiduciary obligation").

[2] This Court denied McClendon's application for interlocutory appeal of this ruling. *McClendon v. State*, Case No. A20I0124 (Dec. 13, 2019).

statute of limitations . . . was tolled pursuant to OCGA § 17-3-2 (2) in that the person committing the crime was unknown until 2018."

McClendon again filed a plea in bar on statute of limitation grounds. Following a hearing, the court concluded that the indictment had not issued until after the limitation period had expired. In reaching this conclusion, the court rejected the State's assertion that the limitation period had been tolled until 2018, when Bone was for the first time able to trace his funds to McClendon's personal account. Instead, the court found that, "as of at least July 21, 2015," Bone "had sufficient subjective knowledge that would lea[d] a reasonable person to believe that [McClendon] had committed [the thefts]." Because that date was more than four years prior to the date of the indictment,[3] the court granted the plea in bar.

_____

[3] The trial court looked to the date of the original indictment—September 4, 2019—as the operative date for limitation purposes, and the State agrees on this point. However, neither the trial court nor the State has explained why the timeliness of the second indictment would depend on the date of the original, quashed indictment. To be sure, under certain circumstances an indictment may "relate back" to a previous indictment for limitation purposes, but that doctrine does not apply here, where the original indictment is no longer pending. See *State v. Outen*, 296 Ga. 40, 45 (3) (764 SE2d 848) (2014) (relation-back doctrine applies where, among other things, "the prior indictment is still pending"). Thus, the date of the second indictment—November 13, 2020—is the operative date for purposes of calculating the limitation period. That said, it ultimately does not matter which of these dates is used. Both dates are (a) more than four years later than July 2015—the time McClendon argues the limitation clock began—and (b) less than four years later than

Discussion

In criminal cases, the statute of limitation runs "from the time of the criminal act to the time of indictment." *Riley v. State*, 305 Ga. 163, 167 (3) (824 SE2d 249) (2019) (punctuation omitted). Criminal statutes of limitation are supposed to protect people from having to defend against charges for long-past conduct as to which the "basic facts may have become obscured by the passage of time," so they are construed "liberally . . . in favor of repose." Id. (punctuation omitted). Accord *Countryman v. State*, 355 Ga. App. 573, 578 (1) (845 SE2d 312) (2020). And the State bears the burden to prove that the indictment issued within the applicable limitation period or, if it did not, that a tolling exception applies. *Riley*, 305 Ga. at 167 (3); *Lewis v. State*, 306 Ga. 455, 462–63 (4) (831 SE2d 771) (2019).

Here, the State argues that the so-called "person-unknown" exception applies. See *Lewis*, 306 Ga. at 463 (4). This exception applies when the identity of the person who committed the crime is unknown, and it tolls the limitation period from the time the crime was committed until that person's identity becomes known to the State.

October 2018, which is when the State contends the limitation period began to run. In other words, if McClendon's theory prevails and no tolling occurred, both the original and second indictments were untimely, and if the State's theory prevails, both indictments issued timely from the date the tolling ended.

7

OCGA § 17-3-2 (2) ("[t]he period within which a prosecution must be commenced . . . does not include any period in which . . . [t]he person committing the crime is unknown"); *Riley*, 305 Ga. at 168–69 (3).

When does the identity of the perpetrator become "known" to the State in this context? Ultimately, it is when the State becomes aware of facts that give rise to probable cause to arrest that person for the crime. *Riley*, 305 Ga. at 169 (3) (statute of limitation is tolled "until the State possesses sufficient evidence to authorize the lawful arrest of that person for the crime charged"). Probable cause exists when the facts known to the State could lead a reasonably prudent person to conclude that there is a "probability" —more than mere suspicion, but less than absolute certainty—that the defendant committed the offense. *Hughes v. State*, 296 Ga. 744, 749 (2) (770 SE2d 636) (2015); see *Riley*, 305 Ga. at 169 (3) ("[t]he test of probable cause requires merely a probability"). In this context, the State is charged with knowledge of the facts actually known by the victim. *Jannuzzo v. State*, 322 Ga. App. 760, 762 (1) (746 SE2d 238) (2013). Accord *Riley*, 305 Ga. at 168 (3).

Thus, to establish that the person-unknown exception applies, the State must show that the facts within its knowledge—including knowledge imputed from the victim—were not enough to lead a reasonably prudent person to identify the

8

defendant as the perpetrator until a time that, relative to the indictment, was within the limitation period. See *Riley*, 305 Ga. at 169 (3) ("[T]he State has the burden of proving that it lacked probable cause to arrest the defendant for a time sufficient to deem the indictment or other charging document timely."); *Countryman*, 355 Ga. App. at 580 (1). Accord *Lewis*, 306 Ga. at 463 (4) (tolling applies where "the State has not obtained sufficient information to establish probable cause to arrest a particular suspect"). If the known facts would allow prudent persons to draw differing conclusions on this point, probable cause exists. See *Hughes*, 296 Ga. at 749 (2); *State v. Culler*, 351 Ga. App. 19, 23 (830 SE2d 434) (2019).

Here, McClendon made a prima facie case that the November 13, 2020 indictment issued beyond the four-year limitation period, counting from each of the dates in March through July 2015 when the thefts occurred. So, to carry its burden to prove that the person-unknown exception applies, the State had to show that Bone's knowledge as of July 2015 was not enough to support probable cause to arrest McClendon for the thefts.

The trial court concluded that the State had not met this burden. Based on the evidence presented at the two plea-in-bar hearings, the trial court found that, as of July 2015, Bone had been informed about the suspicious transfers, which were larger

9

than normal and not associated with invoiced fees; Bone believed McClendon had been the person who signed the checks that effectuated these transfers; and Bone knew that the receiving accounts were held by McClendon and her business entities. These factual findings, the court held, supported the conclusion that, as of July 2015, "[Bone] had sufficient subjective knowledge that would lea[d] a reasonable person to believe that [McClendon] had committed these criminal acts."

We agree with the trial court's analysis.[4] As of July 2015, Bone knew that nearly $300,000 had been withdrawn from his accounts without his authorization or any documented business justification. The withdrawals had been accomplished with checks made out to McClendon, signed by McClendon, and deposited into her accounts. Although McClendon denied having known about the withdrawals and advanced the theory that one of her employees was to blame, a reasonably prudent person under those circumstances would have been justified in disbelieving

---

[4] In reviewing a ruling on a plea in bar on statute of limitation grounds, "we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts." *State v. Campbell*, 358 Ga. App. 389, 392 (2) (855 SE2d 401, 404) (2021) (punctuation omitted). So we must uphold the trial court's factual findings if there is any evidence to support them, but we owe no deference to the court's conclusions of law based on those facts. Id. ("any evidence" standard applies to trial court's fact-findings, but review of legal conclusions is de novo).

10

McClendon's explanation and concluding that she was responsible for the thefts. Bone's email of July 21, 2015—in which he tells McClendon that her story "[d]oesn't make sense" —clearly reflects his skepticism about her explanation. While not dispositive, Bone's doubt about the truth of McClendon's denials supports the determination that a reasonably prudent person under the circumstances would have believed that it was probable—though not necessarily certain—that McClendon was the thief. See *Riley*, 305 Ga. at 169 (3); *Hughes*, 296 Ga. at 749 (2).[5]

The State resists this conclusion and contends that it lacked probable cause to arrest McClendon until 2018. The State points out that Bone continued to employ McClendon as his accountant beyond July 2015 and that Mecklin, a "legal technician," testified that he did not "[feel] comfortable in saying [McClendon] was the one" until he reviewed McClendon's previously undisclosed bank records in October 2018.

These points do not undermine the trial court's finding of probable cause in July 2015. The fact that Bone did not immediately terminate McClendon's services

---

[5] Although Bone testified at both plea-in-bar hearings that he had believed McClendon's explanation until McClendon's bank records were produced in 2018, , he was impeached on this point at the second hearing through his deposition testimony from the civil case, where he testified that he had not believed McClendon.

does not prove that Bone did not believe McClendon was responsible for the thefts,[6] much less that a reasonably prudent person would not have believed as much. And while Mecklin may not have "felt comfortable" reporting McClendon to police until October 2018, "the standard of probable cause is an objective one, and the subjective thinking of [those involved] in a particular case is not important." *Hughes*, 296 Ga. at 749 (2). Based on the trial court's factual findings, a reasonably prudent person would have been justified in concluding well before then that McClendon was likely the thief.

In sum, we conclude that, as of July 2015, the State was chargeable with knowledge of facts that gave rise to probable cause to arrest McClendon for the thefts. See *Campbell*, Ga. App. at 391–92 (2) (holding that, where the State had knowledge, within the limitation period, of many facts indicating the defendant was the perpetrator, the fact that a DNA match was not discovered until years later did not justify tolling the statute of limitation). The four-year statute of limitation thus began to run in July 2015, and the operative November 2020 indictment issued well beyond

---

[6] It is possible, for example, that Bone may have decided because of the complexity of his finances that he needed to allow time to transition to another accountant.

the expiration of the limitation period. The plea in bar was therefore properly granted, see id. at 392 (2).

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur*.