**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2026**

# In the Court of Appeals of Georgia

A25A1714. DUKE v. THE STATE.

PIPKIN, Judge.

Appellant Ryan Alexander Duke challenges his 2022 conviction in Irwin County for concealing the death of Tara Faye Grinstead, whose remains were recovered from a pine forest in neighboring Ben Hill County in 2017. He contends that the evidence presented at trial was insufficient to prove either that he committed the offense of concealing a death in Irwin County or that the statue of limitations was tolled. He further contends that the trial court erred in discharging a sleeping juror during the State's rebuttal presentation. Finally, he contends that the court erred in admitting State's Exhibit 293 — a certified copy of his best friend and roommate Bo Dukes's convictions for concealing a death and other crimes in nearby Wilcox County — and in allowing the jury to read the exhibit in response to a request from the jury during

deliberations. However, as explained below, there was ample evidence at trial that Appellant concealed Grinstead's death in Irwin County and that the statute of limitations for that crime was tolled, and he has not shown that the trial court abused its discretion in replacing the sleeping juror with an alternate. Appellant also has not shown that the trial court abused its discretion in admitting a certified copy of Bo's Wilcox County convictions or in allowing the jury to review the exhibit on request. Accordingly, we affirm the trial court's judgment.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed as follows. Sometime after 11:00 p.m. on Saturday, October 22, 2005, Grinstead, a teacher at Irwin County High School, disappeared from her house at 300 West Park Street in rural Ocilla, Georgia, which is in Irwin County. Law enforcement began investigating the following Monday morning when Grinstead failed to show up for work. Grinstead's mysterious disappearance generated enormous media coverage and a flood of conflicting tips to law enforcement. For more than a decade, based on the totality of the evidence available, law enforcement was unable to determine whether Grinstead was alive or dead or even whether any crime had occurred in relation to her disappearance. As a result, until 2017, the lead investigative agency, the GBI, classified the case as a missing person case.

February 2017 marked a turning point in the case. On February 7, Jason Shoudel, the GBI agent in charge of the investigation into Grinstead's disappearance, interviewed Brooke Sheridan, who was Bo's girlfriend at one time. Then, on February 21, Shoudel interviewed Bo with Bo's attorney present. After the interview, Shoudel and another agent drove to a pecan orchard in Ben Hill County — which was owned by Bo's uncle — where they met with Bo, Bo's attorney, and Bo's uncle. Shoudel told Bo's uncle that he was looking for the site of an unusual burn, and Bo's uncle told the agents about a fire that Bo had built in the middle of a pine forest at the back of the property around the time that Grinstead was reported missing. Bo's uncle then directed the agents to the unusual burn site. Afterwards, Shoudel and another agent drove to Appellant's residence in Irwin County and explained to Appellant that they wanted to interview him about an "older investigation." Appellant's mother agreed to bring him to the Ocilla Police Department for an interview the next day.

During the interview on February 22, recordings of which were played for the jury, Shoudel started out by asking Appellant if he knew what the GBI wanted to talk to him about, and Appellant said that he thought it was about "Ms. Grinstead." Shoudel asked Appellant why he thought that, and Appellant replied, "because I was involved, man." Over the course of the interview, Appellant told agents that, in the

3

early morning hours of Sunday, October 23, 2005, he drove Bo's truck to Grinstead's house in Ocilla and slid back the lock on the front door with a credit card. Appellant claimed that, as he was stealing Grinstead's purse from the kitchen to buy drugs, she snuck up on him and that he turned around and hit her so hard that he killed her. Appellant said that he rushed out of the house, drove home and got a quilt and a pair of "translucent or clear-colored" gloves, and returned to Grinstead's house, where he wrapped her body in the quilt and carried it out to Bo's truck. Appellant stated that he then drove to a pecan orchard in Ben Hill County owned by Bo's uncle and dumped the body. According to Appellant, he and Bo went to the pecan orchard a few days later, moved Grinstead's body into an adjacent pine forest, and used a load of pecan wood from a barn near the entrance to the orchard to burn the body.

When the interview ended, Appellant accompanied Shoudel and another GBI agent to the pecan orchard and pointed out where he initially dumped Grinstead's body. Less than a week later, on February 28, a forensic anthropologist recovered burned adult bone fragments in the vicinity of the burn site identified by Bo's uncle.

On April 12, 2017, an Irwin County grand jury indicted Appellant for concealing a death and other crimes in connection with Grinstead's murder. As relevant here, according to the indictment, on or about October 23, 2005, Appellant "unlawfully

4

conceal[ed] the death of Tara Faye Grinstead, which hindered the discovery of whether or not [she] was unlawfully killed, by removing [her] body from 300 West Park Street, Ocilla, Irwin County, Georgia." The indictment further alleged that "the statute of limitations [was] tolled in that the crime was unknown until February 2017."

On August 15, 2018, Appellant filed a plea in bar based on the statute of limitations. However, at a motions hearing on November 26, 2018, Appellant, represented by new counsel, withdrew his plea in bar.

At Appellant's trial in May 2022, he elected to testify in his own defense. Appellant claimed that he did not murder Grinstead, that he had never been in her house in Irwin County, and that he never took a glove or a pair of gloves to Grinstead's house. He claimed that Bo woke him up on Sunday morning, October 23, 2005, and told him that he — i.e., Bo — had killed Grinstead. Appellant also claimed that Bo showed him Grinstead's driver's license and, later that morning, drove Appellant to his uncle's pecan orchard in Ben Hill County, where he showed Appellant Grinstead's dead body. Appellant admitted helping Bo move Grinstead's body from the pecan orchard to the adjacent pine forest and to helping Bo burn Grinstead's body there.

After the conclusion of the evidence and the parties' closing arguments, the trial court instructed the jury that, "[a]s to statute of limitations, … the law of our state sets

5

… a time limit … [within] which the State has to start the prosecution of most criminal offenses"; that for "concealing the death of another, … the prosecution … must commence within four years after the offense has been committed"; that "in calculating this time period, … you should exclude from your calculation any period of time during which the evidence shows the crime itself was unknown"; and that "[w]hen the statute of limitations defense is raised, … the burden is on the State to prove that the offenses occurred within the statute of limitations or within an exception thereto beyond a reasonable doubt." Immediately after charging the jury on the elements of concealing a death, the court further instructed the jury as follows: "Venue, that is, that the crime was committed in Irwin County, Georgia, is a jurisdictional fact which must be proven by the State beyond a reasonable doubt just as any other elements of the offenses charged … ." The court sent out with the jury a copy of both the indictment and the jury instructions for reference during deliberations.[1]

At the end of the three-week trial, the jury found Appellant guilty of concealing a death but acquitted him of all other charges in connection with the murder of

---

[1] Appellant did not object at trial to the jury instructions on venue, statute of limitations, or tolling, and he does not assert any error in the jury instructions on these topics on appeal.

Grinstead. On May 31, 2022, the trial court sentenced Appellant to serve ten years in prison.

2. Appellant contends that the evidence presented at trial was insufficient to support the jury's finding that he committed the offense of concealing a death in Irwin County. First, he argues that there was no evidence, aside from his own allegedly false confession, that he removed Grinstead's body from her house in Irwin County. See *Sims v. State*, 312 Ga. 322, 326(2) (862 SE2d 534) (2021) ("Venue is a jurisdictional fact that the State must prove beyond a reasonable doubt ..., and determining whether venue has been established is an issue soundly within the province of the jury." (citation modified)). As Appellant acknowledges, in a February 2017 interview, he told Shoudel and another GBI agent that on Sunday morning, October 23, 2005, he wrapped Grinstead's lifeless body in a quilt and removed the body from her house in Irwin County; that interview was recorded, and the recordings were played for the jury. In addition, the State presented evidence that after the February 2017 interview, the GBI obtained a DNA sample and a palm print from Appellant, which the GBI crime lab matched to a palm print and unknown male DNA found on a latex glove that law enforcement officials collected from Grinstead's front yard in Irwin County on Monday morning, October 24, 2005. This evidence was sufficient to enable a rational

jury to conclude beyond a reasonable doubt that Appellant removed Grinstead's lifeless body from her house in Irwin County. See id. at 326(2)(a) ("The State must prove [venue] beyond a reasonable doubt and can do so by direct or circumstantial evidence." (citation modified)).

Second, Appellant argues that the State failed to show how removing Grinstead's body from her house in Irwin County concealed her death or hindered the discovery that she was unlawfully killed. See OCGA § 16-10-31 ("A person who, by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed is guilty of a felony and upon conviction shall be punished by imprisonment for not less than one nor more than ten years ... ."). But this claim is belied by the record. Numerous people, including a number of law enforcement officers, entered Grinstead's house on Monday, October 24, 2005, the day that she was reported missing. Had Appellant not removed Grinstead's body from her house in Irwin County, the State would have discovered her death and the fact that she had been unlawfully killed in October 2005 rather than February 2017. Accordingly, Appellant's claim that the evidence presented at trial was insufficient to support the jury's finding that he committed the offense of concealing a death in Irwin County lacks merit.

3. Appellant also contends that the evidence presented at trial was insufficient to support the jury's finding that the statute of limitations for concealing Grinstead's death in Irwin County was tolled until February 2017. We disagree.

(a) "The basic law governing the statute of limitations in criminal cases is codified at OCGA §§ 17–3–1 to 17–3–3." *State v. Outen*, 296 Ga. 40, 42(2) (764 SE2d 848) (2014). "Broadly speaking, OCGA § 17-3-1 limits the time within which a prosecution for particular offenses must commence, while OCGA §§ 17-3-2, 17-3-2.1, and 17-3-2.2 specify periods that are excluded from the various limitations periods, known as tolling exceptions." *Garrison v. State*, 319 Ga. 711, 716(2) (905 SE2d 629) (2024) (citation modified). The statutory "tolling exceptions are triggered only upon the occurrence of specified facts," and the State must allege those facts in the indictment. Id. at 717(2)(a). However, "the particular facts which constitute exceptions to the bar of the statute of limitations need not be minutely alleged in the bill of indictment. It is sufficient if any of the exceptions stated in the [Code] be stated in the language therein employed." *Taylor v. State*, 174 Ga. 52, 69 (162 SE 504) (1931) (citation modified).

OCGA § 17-3-1(c) requires a prosecution for concealing a death to be "commenced within four years after the commission of the crime." Thus, an

indictment for concealing a death ordinarily must be returned within four years after the crime was committed. See *Hall v. Hopper*, 234 Ga. 625, 626(1) (216 SE2d 839) (1975) ("In criminal cases, the statute of limitations runs ... from the time of the criminal act to the time of indictment ... ."). Accord *Garrison*, 319 Ga. at 716(2). However, OCGA § 17-3-2(2) provides that "[t]he period within which a prosecution must be commenced under Code Section 17-3-1 ... does not include any period in which ... [t]he person committing the crime is unknown or the crime is unknown ... ."

Here, the count of the indictment that charged Appellant with concealing a death in Irwin County on or about October 23, 2005, alleged that "the statute of limitations [was] tolled in that the crime was unknown until February 2017." If, as alleged in the indictment, Appellant's crime of concealing Grinstead's death in Irwin County was unknown to the State from the time he committed the crime until he told the GBI what he had done in February 2017, then the April 2017 indictment was returned well within the four-year statute of limitations for concealing a death.

(b) "The State has the burden at trial to prove that a crime occurred within the statute of limitations, or, if an exception to the statute is alleged, to prove that the case falls properly within the exception." *Lewis v. State*, 306 Ga. 455, 462-63(4) (831 SE2d 771) (2019) (citation modified).

10

The crime-unknown tolling exception applies until the State has *actual* knowledge of the crime. See *Riley v. State*, 305 Ga. 163, 168(3) (824 SE2d 249) (2019). Mere constructive knowledge of a crime — i.e., what the State should have known through the exercise of reasonable diligence — does not end the tolling period. See id. (stating that the crime-unknown "tolling period ends when the State has actual, as opposed to constructive, knowledge of … the crime."). The evidence presented at trial and summarized in Division 1 above was sufficient to enable a rational jury to find that Appellant's concealment of Grinstead's death in Irwin County was unknown to the State until he confessed what he had done in his interview with the GBI in February 2017. Accordingly, this claim fails. See *Higgenbottom v. State*, 290 Ga. 198, 199, 204(3) (719 SE2d 482) (2011) (holding that "the record does not support a finding that the State had actual knowledge that there was criminal wrongdoing" in the death of a 15-day-old infant for more than 14 years, even though in the six weeks following the infant's death, the police twice interviewed the person who was ultimately indicted for

murder, first degree child cruelty, and aggravated battery).[2]

(c) Appellant's arguments to the contrary are unpersuasive. First, in his brief on appeal, Appellant boldly asserts that "[t]he evidence elicited by the State at trial … demonstrates unequivocally that the State knew about Mr. Duke's involvement in the burning of Ms. Grinstead's body in the [pecan] orchard [in Ben Hill County] in November 2005, just weeks after Ms. Grinstead disappeared." But he has failed to support this assertion with even a single citation to the record in this case, in contravention of this Court's rules. See Court of Appeals Rule 25(a)(5) ("At a minimum, the appellant's brief must include … [a] statement of the case that sets out the material facts relevant to the appeal, … with appropriate citations to the record."), (d)(1)(i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not

---

[2] For purposes of the crime-unknown tolling exception, the victim's knowledge of the crime is imputed to the State. See *Jones v. State*, 315 Ga. 117, 120(2) (880 SE2d 509) (2022) ("The knowledge of the victim is the knowledge of the State." (citation modified)). See also id. at 119-20(2) (distinguishing the crime-unknown tolling exception from the perpetrator-unknown tolling exception). However, by definition, the crime of concealing a death takes place after the victim is dead. And corpses have no knowledge that can be imputed to the State. See *Jannuzzo v. State*, 322 Ga. App. 760, 762(1) (746 SE2d 238) (2013) ("Under [the crime-unknown] exception, the statute of limitation is tolled until the victim has actual knowledge of the crime — what the victim actually knew." (citations omitted)).

search for and may not consider that enumeration."). Moreover, as outlined in Division 1 above, the record in this case shows that Appellant's concealment of Grinstead's death in Irwin County was unknown to the State until he confessed what he had done in his February 2017 interview with the GBI.

Second, Appellant observes that, in *Duke v. State*, 374 Ga. App. 531 (913 SE2d 391) (2025), this Court said that "the State had probable cause in November of 2005," and he argues that "[t]here is no conflict in the evidence, as already found by this Court, that the statute of limitations was not tolled and that this prosecution is barred by the statute of limitations." But that case came to this Court in a different procedural posture — on interlocutory appeal from the denial of a plea in bar — and, more importantly, that case was based on a very different (and comparatively meager) factual

record.[3] As a result, Appellant does not argue that the decision in *Duke* is law of the case or that we are bound to follow it based on res judicata or collateral estoppel. See *Sammons v. Tingle*, 216 Ga. 814, 815-16(3) (120 SE2d 124) (1961) ("The facts in the two records make ... different cases, and a decision by this [C]ourt, upon one state of facts[,] is not binding upon another."). The record in *this* case — which dwarfs the record in *Duke* — fully supports the jury's finding that the statute of limitations for concealing Grinstead's death in Irwin County was tolled until February 2017.

4. Appellant argues that the trial court erred in discharging Juror 71 during the State's rebuttal presentation for sleeping and replacing the juror with an alternate. We disagree.

---

[3] Within days of Appellant's sentencing for concealing Grinstead's death in Irwin County in 2022, a Ben Hill County grand jury indicted him for concealing Grinstead's death there, as well as hindering the apprehension or punishment of a criminal, two counts of concealing a material fact in a matter within the jurisdiction of a government agency, and two counts of tampering with evidence. Appellant filed a plea in bar based on the statute of limitations, which the trial court denied after holding two evidentiary hearings. On appeal, this Court concluded — based solely on the record in that case — that "law enforcement had probable cause to arrest [Appellant] by late November 2005" for the crimes charged in the Ben Hill County indictment. *Duke*, 374 Ga. App. at 531. In that case, we had no occasion to — and therefore did not — opine on when Appellant's crime of concealing Grinstead's death in Irwin County became known to the State.

(a) It was during the week-long voir dire that the State first noted on the record that Juror 71 might have been sleeping. The following week, before any witnesses took the stand, the trial court held an in-chambers discussion with the parties and their attorneys about Juror 71. Referring to voir dire, the trial court clerk stated that Juror 71 "had to be woken up a couple of times in court," although one of Appellant's attorneys stated that she had been sitting closer to Juror 71 and that she actually did not think that "he was asleep."

Towards the end of the trial, after the State finished its direct examination of its final rebuttal witness, the trial court called the attorneys up to the bench and informed them that Juror 71 appeared to the court to have been asleep for the last 20 minutes of the witness's testimony. Following a lunch break, a bailiff informed the court that two jurors had complained to him that "two of [their] fellow jurors spend most of the time doing a lot of sleeping up here" and had asked the bailiff "what, if anything, is going to be done about it." During the defense's cross-examination of the rebuttal witness, one of Appellant's attorneys requested a bench conference at which one of Appellant's other attorneys informed the court that the same two jurors who had been complained about "may be dozing off." At the conclusion of the bench conference, the court asked

15

the two jurors if they were okay, and the parties continued their examination of the rebuttal witness.

After the State finally rested its case, the trial court questioned Juror 71, who acknowledged that he worked at night, was having a hard time that day, and had fallen asleep during the testimony that morning and again that afternoon. Juror 71 also admitted that he had fallen asleep "[o]n some previous days in the trial." The court then excused Juror 71 from the jury. The defense objected, but the court overruled the objection, stating, "I watched … this juror sleep on and off for a week-and-a-half. … He admitted he sleeps, has to work at night, and slept through the trial on numerous days."

(b) "It is well established that OCGA § 15-12-172 gives a trial court the discretion to discharge a juror and replace him or her with an alternate at any time so long as the trial court has a sound legal basis." *Lee v. State*, ___ Ga. ___, ___ (4) (924 SE2d 278) (2025) (citation modified). See OCGA § 15-12-172 ("If … a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take [his] place … ."). "A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process." *Jones v. State*, 314

Ga. 214, 222-23(2)(b) (875 SE2d 737) (2022) (citation modified). In *Gibson v. State*, 290 Ga. 6 (717 SE2d 447) (2011), our Supreme Court held that the trial court did not abuse its discretion in discharging a juror over the defense's objection where the trial court had observed the juror sleeping during the presentation of the evidence on each of the first two days of the trial. See id. at 10(5). And in *Brown v. State*, 356 Ga. App. 516 (848 SE2d 126) (2020), we held that the trial court did not abuse its discretion in removing a juror over the defendants' objections where the court twice noticed the juror "appearing to fall asleep ... during the presentation of evidence." Id. at 521-22(2). Accordingly, the trial court here did not abuse its discretion in discharging Juror 71 for sleeping and replacing him with an alternate.

5. Finally, Appellant asserts that the trial court erred in admitting State's Exhibit 293 and in allowing the jury to read it in response to a request from the jury during deliberations. We see no abuse of discretion.

(a) On August 28, 2017, a Wilcox County grand jury indicted Bo on two counts of making a false statement in a matter within the jurisdiction of a government agency and one count each of hindering the apprehension or punishment of a criminal and concealing a death. Each charge was based on statements that Bo made in Wilcox County to "Agent Jason Shoudel of the Georgia Bureau of Investigation" on June 16,

17

2016, in which he denied discussing with an old Army buddy Appellant's alleged confession to killing Grinstead and burning her body. At a March 2019 trial, a Wilcox County jury found Bo guilty on all counts, and he was sentenced to serve a total of 25 years in prison. This Court later affirmed Bo's Wilcox County convictions. See *Dukes v. State*, 365 Ga. App. 246, 246 (878 SE2d 104) (2022).

(b) At Appellant's May 2022 trial in Irwin County, a key defense theory was that Bo murdered Grinstead and escaped prosecution for the murder by pinning it on Appellant. In support of this theory, the defense planned to call Bo to the witness stand, to which the State objected on the ground that Bo would invoke his Fifth Amendment right against self-incrimination and refuse to answer any questions. The defense sought and obtained a ruling from the trial court that Appellant could call Bo to the stand and that, if he declared his intent to invoke his Fifth Amendment right not to testify, he could be impeached under OCGA § 24-6-609 with certified copies of his 2019 Wilcox County convictions and a 2013 federal conviction. See OCGA § 24-6-609(a)(1)-(2) (providing that, "[f]or the purpose of attacking the character for truthfulness of a witness," evidence that a witness other than the defendant has been convicted of a felony is admissible subject to OCGA § 24-4-403 and evidence that a witness has been convicted of any crime requiring proof of an act of dishonesty or

18

making a false statement is admissible). See also OCGA § 24-8-803(22) (providing that evidence of a previous judgment of conviction for a felony offered to prove any fact essential to sustain that judgment is not excluded by the rule against hearsay unless the conviction is of a person other than the defendant and the State offers it in a criminal prosecution "for purposes other than impeachment").[4]

The defense called a number of witnesses, including Appellant, who elected to testify in his own defense. In his testimony, Appellant repeatedly recounted out-of-court statements that he claimed Bo had made to him. Next, the defense called Bo to

---

[4] Before trial, in his Response and Objection to State's Motion to Exclude Improper Character Evidence, Appellant expressly argued:

Bo Dukes' prior felony conviction in Wilcox County on March 21, 2019 in *State v. Dukes*, Case No. 2017-CRW-038, [Superior] Court of Wilcox County … is admissible as impeachment evidence under both subsections of Rule 609 [i.e., OCGA § 24-6-609(a)(1) and (2)]. It is admissible under [subsection] (a)(1) because Bo Dukes received a [felony] sentence … and there is no risk of prejudice to [Appellant] in admitting the conviction. The conviction also is admissible under subsection (a)(2) because Counts 1 and 2 required proof or admission of an act of dishonesty or making a false statement. … Thus, to the extent the State's Motion seeks to exclude either of these two felony convictions [i.e., Bo's 2019 Wilcox County convictions and his 2013 federal conviction], the Motion must be denied.

the stand to testify, but in response to every question except one, Bo invoked his Fifth Amendment right not to provide testimony. The defense introduced a certified copy of Bo's 2013 federal conviction for conspiracy as impeachment. The court asked Bo if he intended to invoke his Fifth Amendment right not to provide testimony in response to all questions, and Bo replied, "I do, Your Honor." The court asked the defense if there was "[a]ny reason to continue this," and when the defense said no, the court excused Bo as a witness.

During the State's rebuttal presentation, the State tendered State's Exhibit 293, a certified copy of Bo's Wilcox County convictions, which consisted of his 2017 indictment and the 2019 Final Disposition sentencing him to serve 25 years in prison. The court asked if the defense had any objection. Despite the defense's previous arguments and the court's ruling that Bo's Wilcox County convictions were admissible for impeachment under OCGA § 24-6-609, the defense replied that it "might have an objection" and asked for time to think about it, which the court granted. At the end of the State's rebuttal presentation, the State again tendered State's Exhibit 293, and this time, the defense objected. As relevant here, the defense argued, "We weren't allowed to cross-examine him [i.e., Bo], so we can't question him about this." The court overruled the objection and admitted State's Exhibit 293 for impeachment purposes.

(c) On the first day of deliberations, the jury sent the court two notes asking how the jury instructions on venue applied to the count of the indictment charging Appellant with concealing a death in Irwin County, which the court answered in a manner approved by the parties. On the second day of deliberations, the jury sent the court a third note that read:

1.    In an effort to ensure we, the jury, have a correct understanding of the law as it relates to venue and applicable charges, would you agree the location of the crime as listed in the indictment has to be proven or disproved and plays a role in determining the verdict?

2.    The jury would like to review State's Exhibit # 293.

The court proposed bringing the jury into the courtroom and letting the jurors pass around State's Exhibit 293. The defense renewed its earlier objection to the exhibit and added, "the reason we didn't attempt to tender this is there's *Crawford* statements from Bo Dukes that are contained in the listing of counts, and so that would need to be redacted." The court responded, "I've admitted it over y'all's objections. Jury wants to see it. Your objection is timely made, overruled for the record. I'm going to let the jury consider it. It's in the record. It's been admitted into evidence."

The defense then argued, "[I]t says Bo Dukes said [Appellant] said to law enforcement. That is the definition of testimonial, and that's what you said could not

come in previously because we couldn't cross-examine Mr. Dukes about it." The court said:

> I understand that. It's been admitted. Y'all's whole argument was he's here because of Bo Dukes and what Bo Dukes said. That's what -- that's no secret to anything, and y'all made sure the jury understood that. And that's fine, you know; but I think it's a little disingenuous to argue, argue, argue Bo Dukes is the reason he's sitting there, what Bo Dukes told the police, and then say, wait a minute, let's don't let the jury see that, though.

The defense tried again, arguing, "I think that ... the testimonial language in there is significant at this point to introduce to the jury, because everybody has been very careful with Bo Dukes to not admit testimonial evidence; and this is testimonial and not subject to cross-examination." But the court was not persuaded and replied, "It was admitted. ... [T]he State tendered it. I admitted it over your objection. It was available to be published to the jury at that time."

The court then had the jury brought into the courtroom for approximately 30 minutes. By agreement of the parties, the court responded to the jury's question both orally and in writing as follows: "The State has to prove venue as to each count of the indictment as charged, beyond a reasonable doubt. Venue can be proven by direct or circumstantial evidence, or both. The defendant has no burden to disprove venue, or anything else." The court then directed that State's Exhibit 293 be handed to the jury

22

for the jurors to pass around and review. When the jurors were finished reviewing the exhibit, the court sent them back to the jury room. A little more than an hour later, the jury informed the court that it had reached a verdict.

(d) We assume, without deciding, that Appellant's objection to admitting State's Exhibit 293 into evidence on the ground that "[w]e weren't allowed to cross-examine him [i.e., Bo], so we can't question him about this," sufficiently preserved a Confrontation Clause claim for ordinary appellate review. See *Head v. State*, 319 Ga. 267, 272(2) (903 SE2d 49) (2024). Appellant's objection to allowing the jurors to physically review State's Exhibit 293 on the ground that it contained "*Crawford* statements from Bo" and "testimonial language" was sufficient to preserve a Confrontation Clause claim. See *Crawford v. Washington*, 541 U.S. 36, 53-54(III)(B) (124 SCt 1354, 158 LE2d 177) (2004) (holding that the Confrontation Clause bars the "admission of testimonial statements of a witness who [does] not appear at trial unless he [is] unavailable to testify, and the defendant [has] had a prior opportunity for cross-examination"). Thus, we review the trial court's decisions to admit State's Exhibit 293 and to allow the jury to review the exhibit on request for abuse of discretion. See *Campbell v. State*, 320 Ga. 333, 350(5)(a) (907 SE2d 871) (2024).

Appellant argues that admitting State's Exhibit 293 in to evidence and allowing the jury to read it on request during deliberations violated his rights under the Confrontation Clause, citing *Kirby v. United States*, 174 U.S. 47 (19 SCt 574, 43 LE 890) (1899), and *State v. Jefferson*, 302 Ga. 435 (807 SE2d 387) (2017). In *Kirby*, the United States Supreme Court held that the Confrontation Clause bars the admission of a judgment of conviction of a third party against a defendant to prove that the third party actually was guilty of the crime of conviction where an element of the third party's crime is also an element of a crime with which the defendant is charged. See 174 U.S. at 54-55. See also *Pierce v. State*, 319 Ga. 846, 854(4) (907 SE2d 281) (2024) ("*Kirby* ... held that the Confrontation Clause prohibits the government from admitting the records of conviction of non-testifying third parties as a substitute for testimony against a defendant to establish an element of a criminal charge against the defendant."). Thus, the Court held that the government violated the Confrontation Clause when it introduced the convictions of three men for stealing certain federal property (two on guilty pleas, and one after trial) in Kirby's prosecution for knowingly receiving that stolen federal property to prove that the property allegedly received by Kirby had, in fact, been stolen from the federal government. See *Kirby*, 174 U.S. at 53-54. See also *Jefferson*, 302 Ga. at 437 (describing *Kirby* as holding that the introduction

24

of "certified copies of convictions of three individuals for theft of government property as evidence in the prosecution of Kirby for being in receipt of that stolen property ... violated Kirby's Sixth Amendment rights").

However, the Court in *Kirby* was careful to distinguish situations where the record of a third party's conviction, though testimonial, is introduced solely to prove the existence of the conviction rather than the facts necessary to support the conviction. Thus, the Court explained that if a

> statute makes the conviction of the principal thief a condition precedent to the trial and punishment of a receiver of the stolen property, the record of the trial of the former would be evidence in the prosecution against the receiver to show that the principal felon had been convicted; for a fact of that nature could only be established by a record. The record of the conviction of the principals could not, however, be used to establish, against the alleged receiver, ... the essential fact that the property alleged to have been feloniously received by him was actually stolen from the United States.

*Kirby*, 174 U.S. at 54. See also id. at 59 ("As proof of the fact of conviction, the record would be admissible and conclusive; but it seems not to be admissible evidence of the guilt of the convict, as against another person charged with being connected with him in crime ... ."). Thus, where the evidence of a third party's conviction is admitted solely to prove the fact of the prior conviction, no Confrontation Clause problem arises. See id. See also *Crawford*, 541 U.S. at 59(IV) n.9 ("The Clause does not bar the

25

use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

That is precisely the situation here. State's Exhibit 293 was tendered and admitted for the purpose of impeachment by prior conviction, the same as Bo's 2013 federal conviction. It was introduced solely as "evidence that a certain person, named in the record, was convicted by the jury" of a felony, *Kirby*, 174 U.S. at 59, making Bo less worthy of belief that the average person, and not to establish "the truth" of the underlying charges, *Crawford*, 541 U.S. at 59(IV) n.9. Thus, there was no violation of the Confrontation Clause, and the trial court therefore did not abuse its discretion in admitting a certified copy of Bo's Wilcox County convictions or in allowing the jury to review State's Exhibit 293 on request.[5]

*Judgment affirmed. Hodges, J., concurs. McFadden, P. J., concurs fully in Divisions 1, 2, 4 and 5 and concurs specially as to Division 3.*

---

[5] Contrary to Appellant's claim, a Confrontation Clause objection does not preserve a hearsay argument for review. See *Quintanar v. State*, 322 Ga. 61, 63(1) n.2 (917 SE2d 666) (2025) ("An objection to evidence on constitutional grounds does not preserve a related statutory ground for review."). See also id. (citing as an example a prior case "holding that [an] objection to evidence on Confrontation Clause grounds does not preserve for review a hearsay objection to the same evidence").

A25A1714. DUKE v. THE STATE.


McFADDEN, Presiding Judge, concurring fully in part and specially in part.

I agree with the majority that the judgment in this case should be affirmed, and I concur fully in Divisions 1, 2, 4, and 5. But I concur specially as to Division 3. I agree with the majority that the evidence at the trial in this case authorized the jury to find that the statute of limitations was tolled as to the charge that appellant Ryan Duke concealed Grinstead's death by moving her body from the address in Irwin County. But I do not agree with all that is said in that division.

In Division 3 the majority deems misplaced Duke's reliance on our opinion in *Duke v. State*, 374 Ga. App. 531 (913 SE2d 391) (2025), cert. denied (May 28, 2025).

I agree, but for different reasons. And I disagree with the majority's assertion that Duke's argument violates our rules.

At issue is the application of the crime-unknown tolling exception to the statute of limitations set forth in OCGA § 17-3-2(2), which "allows tolling of the statute of limitation when the person committing the crime is unknown or the crime is unknown." *Riley v. State*, 305 Ga. 163, 168(3) (824 SE2d 249) (2019) (citation and punctuation omitted). Our Supreme Court has construed OCGA § 17-3-2(2) "to mean that a statute of limitation is tolled with respect to an 'unknown' person until the [s]tate possesses sufficient evidence to authorize the lawful arrest of that person for the crime charged." *Riley*, 305 Ga. at 169(3).

Appellant Ryan Duke appeals from his conviction for the crime of concealing the death of another, OCGA § 16-10-31, by "removing . . . Tara Faye Grinstead's body from [a particular address in] Irwin County, Georgia[.]" As the majority notes, the state presented evidence at trial that law enforcement officers did not become aware that Duke had taken such action until 2017, when Duke confessed to doing so.

But Duke argues that by late November 2005, law enforcement officers were in possession of information that would have authorized his arrest for the concealment crime, namely that appellant Ryan Duke and Bo Dukes had said at a party that they had

2

killed Grinstead and burned her body. At the trial in this case, a witness, Garland Lott, testified that he had been at the party and that Duke and Dukes had said to him, "we killed her and we burned her. Lott testified that at the time he was shocked and "didn't inquire or ask any more questions about it." But shortly thereafter he told other people about the comment, and one of those people had Lott sign a written statement about it, which was given to law enforcement.

In *Duke v. State* we held that as a matter of law the 2005 comment about killing Grinstead and burning her body — along with other evidence of record in that case — gave rise to probable cause that appellant Duke had committed various crimes, including the concealment of her death, in Ben Hill County, where Grinstead's burned remains ultimately were found. 374 Ga. App. at 536-37(1). Consequently, we held that the state had not shown that the crime-unknown tolling exception applied to the charges in Ben Hill County, and thus the trial court erred in denying Duke's plea in bar in that case. Id. at 537(1).

Duke argues that our holding in *Duke v. State* should also govern the outcome of this case. To that end, Duke provides numerous citations in his appellate brief to testimony given at the plea-in-bar hearing in *Duke v. State*.

Duke contends that we can consider the evidence of record in *Duke v. State* because,

> The trial court in Irwin County was aware of the appeal in A24A1618 and watched the oral arguments in that case. (Motion for New Trial Transcript, February 3, 2025, at 22). The trial court said that the defense's arguments in both Ben Hill and Irwin County on this issue were "hard fought." (Id.)

I am not persuaded. Duke cites no authority for that contention, and I am aware of none. So I agree with the majority that we cannot consider that evidence. But Duke's effort to persuade us otherwise is not improper, and his citation to a hearing transcript in the present case precludes a finding that he violated our Rule 25 (a) (5).

As for our unanimous published opinion in *Duke v. State*, I also agree with the majority that it does not control our decision today, but for a different reasons. It is beside the point that the record now before us is more voluminous or that the procedural posture is different.

*Duke v. State* has little bearing on our decision today because much of the plea-in-bar testimony that was dispositive in that case is not of record in this one. And our opinion in *Duke v. State* concerns the state's knowledge of acts of concealment alleged to have occurred in Ben Hill County, so it is not directly relevant to the state's knowledge of different acts of concealment alleged to have occurred in Irwin County.

4

The comment made at the party in 2005, about which Lott testified at the trial in this case, did not concern appellant Duke moving Grinstead's body from the address in Irwin County. That comment implicated Duke in killing Grinstead at an unspecified location and in burning her body in Ben Hill County — crimes for which he was not convicted.